Michael Orlando, Appellant, *v.* Schiavo Brothers, Incorporated and Continental National American Group, Insurance Carrier, and Workmen's Compensation Appeal Board, Appellees.

Argued June 7, 1973, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Charles C. Hansford,* for *Thomas F. McDevitt,* P.C., for appellant.

*David L. Pennington,* with him *Harvey, Pennington, Herting & Renneisen, Ltd.,* for appellees, employer and insurance carrier.

*James Diefenderfer,* for appellee, Workmen's Compensation Appeal Board.

OPINION BY JUDGE ROGERS, August 29, 1973:

Claimant, Michael Orlando, is receiving benefits pursuant to an agreement voluntarily entered into by him and his former employer, Schiavo Brothers, Inc., reciting his disability as a result of back injuries suffered in an accident on February 28, 1967, and which was modified by a supplemental agreement reflecting his return to work at a reduced rate of pay. Orlando thereafter filed a petition to modify the agreement on the

ground that his average weekly wages were understated in the original agreement because it had failed to include a bonus paid to him on June 12, 1967. The referee granted claimant's petition, but, on appeal, the Workmen's Compensation Appeal Board reversed, concluding on the facts found concerning the bonus that the referee had committed an error of law in deciding that the bonus should be included in the computation of the claimant's average weekly wage.

The term "average weekly wage" is defined in clauses (d) and (e) of Section 309 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §582, the pertinent parts of which are:

"(d) If at the time of the injury the wages are fixed by the day, hour, or by the output of the employe, the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury, or in case the employe receives wages, monthly or semimonthly, by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of three consecutive calendar months in the year immediately preceding the injury. . . .

". . . .

"(e) . . . The terms 'average weekly wage' and 'total wages,' as used in this section, shall include board and lodging received from the employer, and in employments in which employes customarily receive not less than one-third of their remuneration in tips or gratuities not paid by the employer, gratuities shall be added to the wages received but such terms shall not include

amounts deducted by the employer under the contract of hiring for labor furnished or paid for by the employer and necessary for the performance of such contract by the employe, nor shall such terms include deductions from wages due the employer for rent and supplies necessary for the employe's use in the performance of his labor."

The case of *Chubb v. Allegheny Country Club*, 147 Pa. Superior Ct. 146, 24 A. 2d 550 (1942), is helpful in applying the statutory language. There, the Superior Court declined to approve the inclusion, as a part of a claimant's average weekly wages, of tips and Christmas presents given to him by individual club members, observing that " '. . . there was no implied term in the contract of hiring that they were to be treated as a part of the claimant's wages in computing the wage-base and the extent of the defendant's legal liability'." 147 Pa. Superior Ct. at 152. The Court distinguished the situation of a restaurant waiter whose income may to a large degree be derived from such sources.

Here, the employer had no contractual obligation to pay claimant a bonus. The employer did not term the amount "wages" and he had complete, unfettered discretion in deciding whether it would be paid at all. As Michael Schiavo, a former owner of Schiavo Bros., explained at the hearing before the referee: "A. . . . I used to get my report from our auditors about May to see whether we made or lost money. Q. In the prior year? A. Yes, and then I decided if we had enough money to compensate the men in the shop for good performance of work. . . . A. If business was good we paid a bonus; if it didn't do good we didn't pay." Schiavo also testified that the last bonus was paid in June, 1967. There was, thus, no objective method of calculating how large or even whether a bonus would be

paid. Finally, the bonus represented a relatively small fraction of claimant's total income from his employment.

The cases cited by claimant do not dictate a contrary result. *Tucker v. Tucker*, 370 Pa. 8, 87 A. 2d 650 (1952), merely held that a bonus was there a necessary and justified business expense deductible in computing net profits. The court's definition of the bonus as ". . . technically . . . a sum voluntarily paid to an employee over and above his wages" though ". . . in reality merely an additional arrangement for compensation for his services . . ." was applied there to a bonus in a fixed percentage of annual profits, paid regularly under an oral agreement to a faithful employee of 40 years service. The cases of *Widmer v. Widmer*, 176 Pa. Superior Ct. 264, 106 A. 2d 875 (1954), and *Specker v. Sun Ray Drug Co.*, 163 Pa. Superior Ct. 39, 60 A. 2d 400 (1948), merely stand for the proposition, not here disputed, that a valid contract to pay a bonus can be enforced by the recipient of the proposed bonus. Here, no such contract was established.

The order of the Workmen's Compensation Appeal Board is affirmed.