531 A.2d 555

George P. Vas, Petitioner *v.* Workmen's Compensation Appeal Board (Bethlehem Steel Corporation), Respondents.

Argued April 23,, 1987, before Judges DOYLE and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Richard J. Jacobs,* for appellant.

*Robert H., Holland,* with him, *Barbara L. Hollenbach,* for respondent, Bethlehem Steel Corporation.

OPINION BY SENIOR JUDGE BARBIERI, September 21, 1987:

George P. Vas, Claimant in this workmen's compensation case, seeks review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision granting a Modification Petition filed by Defendant.

Claimant, while employed as a machine operator by Bethlehem Steel Corporation (Employer), Defendant,

suffered an injury on February 4, 1983 consisting of a torn rotator cuff of the right shoulder sustained while using a wrench at work. Compensation benefits were paid pursuant to a Notice of Compensation Payable, at the rate of $306 per week, "the maximum weekly compensation payable" for 1983 injuries.[1] Subsequently, on May 5, 1983, Defendant filed its Modification Petition seeking a reduction as of May 1, 1983 of compensation benefits payable to the Claimant. On or about April 29, 1983, Defendant offered Claimant re-employment in a position as janitor with duties therein reduced in order to compensate for Claimant's continuing disability. The modified janitorial position would provide a wage of $379.80 per week as compared with the then agreed average weekly wage of Claimant at the time of his injury of $632.30, a loss of $252.50, yielding a continuing payment of compensation benefits for partial disability at the rate of $168.34.[2] Further, the referee's reduction in weekly benefits for partial disability was back-dated to May 1, 1983, determined by the referee to provide the Employer with an entitlement to a $50.00 per week credit from that date and treating this as an overpayment. It was further ordered that the Employer be thus reimbursed by this credit against future payments to compensate for this over-payment which it is stated amounts to the total sum of $18,000.

---

[1] Section 105.2 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* Act of December 5, 1974, P.L. 782, 77 P.S. §252. The relevant portion of this amendment provides that " 'the maximum weekly compensation payable' . . . shall mean the Statewide average weekly wage in Section 105." The Statewide average weekly wage as fixed by the Department under authority of Section 105.1 of the Act, 77 P.S. §25.1 for the injury year, 1983, was $306.

[2] Two-thirds of the difference of $252.50 is $168.34, the maximum allowable for such partial disability under Section 306(b) of the Act, 77 P.S. §512.

Also, the referee by arithmetical error in his opinion of December 10, 1984, ordered partial disability benefits from May 1, 1983 at the rate of $252.50, rather than two-thirds thereof, or $168.34. In that opinion there is included the following:

> Defendant is entitled to credit for the overpayment of compensation from May 2, 1983 to date and may deduct the sum of $50.00 per week from the compensation payable to the claimant for partial disability until overpayment from May 2, 1983 to date, is paid in full.

This was plain error. No such credit is authorized absent a supersedeas, and the Modification Petition herein did not qualify for an automatic supersedeas under Section 413 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §774, nor was a supersedeas requested in the Employer's Modification Petition.[3]

Claimant's appeal here is two-fold: (1) the Defendant has failed to meet its burden to show a reduction in compensable disability; and (2) the Defendant has provided an average weekly wage which is in error in failing to include therein vacation and holiday pay.

We address first the Claimant's contention that the referee's finding of a reduction in disability is not based upon substantial evidence and that, therefore, it cannot stand. The referee's controlling disability findings are as follows:

5. Claimant was evaluated by Dr. Jeffrey Hare, defendant's plant physician, on April 25, 1983 at

---

[3] While this credit provision is not included in the referee's amended order of January 14, 1985, changing the rate to $168.34, and it has nothing to do with the referee's arithmetical error, the parties seem to accept this portion of the erroneous first order. If there is a basis for the credit which we have not recognized, it can be presented on the remand which we will order.

which time, Dr. Hare released the claimant to return to work at light duty as a janitor, with restrictions.

6. The position as janitor which paid $379.80 per week was offered to the claimant on April 29, 1983 by defendant, but claimant refused to accept this position as he believed he could not perform the duties of a janitor.

7. Claimant retired from defendant's employ on April 30, 1983 effective May 2, 1983.

8. Claimant has not returned to work since the date of injury except on one occasion when he tried to perform some janitorial duties at defendant's place of employment but testified that he could not do so because of the limitation of the use of his right arm and shoulder.

9. The Referee accepts the opinion and testimony of Dr. Hare, defendant's evaluating physician, that claimant was able to return to light work as of April 25, 1983.

10. The Referee rejects the claimant's testimony that he was unable to perform the duties of a janitor as of May 2, 1983.

Claimant adduced no medical testimony and our study of the record reveals that the finding of Claimant's capacity to resume some form of light-duty work such as that offered by the Employer is supported by substantial evidence and must, therefore, be approved by us.[4]

Claimant's second contention is more difficult:[5] that there should be added into the formula for determining

---

[4] We note that Claimant called no medical witness.

[5] We seriously question whether this issue should be addressed on this appeal. The wage at $632.30, as computed by Employer, was not questioned before the referee. Since this issue was recognized by Judge ROGERS in his order of August 22, 1986,

average weekly wage the additional amounts paid by the Employer in the form of holiday and vacation pay.[6] As with all wage computations, the answer must be found in Section 309 of the Act, 77 P.S. §582. Apparently, the average weekly wage was computed by the Employer under Section 309(f), 77 P.S. §582(f). This sub-section reads:

> (f)  In no case shall an employe's average weekly wage be less than one-thirteenth of his highest calendar quarter wage amount in the first four of the last five completed calendar quarters *immediately preceding the date of his injury,* and compensation payments may be commenced on this basis unless other information obtained from the employe or employer establishes a higher weekly wage under this section. (Emphasis added.)

William S. Bickert, Employer's workers' compensation coordinator, testified:

Q.  What wages did you give, then?

A.  His average weekly wage at the time of his injury was calculated under the compensation act came to $632.30.

Q.  How as [sic] that calculated?

A.  Well, there were two computations. One was his highest quarter, thirteen week quarter divided into the amount that he hearned

---

and both parties request a remand for consideration of the question by a referee, we will remand.

[6] Claimant was about to retire in 1983 and after the injury of February 4, 1983, he testified that he exercised his privilege to take down vacation pay (apparently three of four weeks payable) "to keep my high earnings up." R.R. 75a. We note that this money, paid after the injury would normally not be includable in the average weekly wage compensation for fixing the compensation benefit rate.

[sic] for the thirteen week period came to $632.30 and we used the higher of the two.
R.R. 53a.

Defendant points out that neither this computation of Claimant's weekly wage at the time of the injury at $632.30, nor the average weekly wage payable by the Employer on the offered janitorial work at $379.80, was questioned at the time of the trial. Subsequently, however, there was an effort to remand by agreement in order to resolve this issue, but this application was rejected in an order by Judge ROGERS, dated August 22, 1986, on the basis that the necessary factual circumstances would be supplied by stipulation and with no need for a remand. Agreement on a stipulation was not achieved and we believe that a remand is unavoidable.

It would appear that in some cases involving retirement from employment by this Employer the employe may demand and receive vacation pay and holiday pay under certain circumstances which are not clear to us at this time.[7] Coupled with this, also, Claimant points to the last paragraph in Sub-Section 309(e) of the Act, 77 P.S. §582(e), which reads:

If under clauses (a), (b), (c), (d) and (e) of this section the amount determined is less than if computed as follows, this computation shall apply, viz.: Divide the total wages *earned by the employe during the last two complete calendar quarters* with the same employer by the number of days he worked for such employer during such period multiplied by five. (Emphasis added.)[8]

Claimant contends that under this clause and other provisions of Section 309, Claimant's average weekly

---

[7] See Footnote 6.

[8] We note that this quoted paragraph does not apply to Subsection (f) quoted above which we there noted was employed here as providing the highest benefit rate.

wage would reach $807.60 per week, obviously yielding a very much larger partial disability payment than that fixed by the referee. Unfortunately for Claimant's contention, however, as with other computations under Section 309 with only two exceptions, the average weekly wage for compensation purposes is based upon wages *earned* during whatever period is being used as a basis for computation and this does not include tips[9] and Christmas presents, *Chubb v. Allegheny Country Club*, 147 Pa. Superior Ct. 146, 24 A.2d 550 (1942), nor fringe benefits such as a bonus, *Orlando v. Schiavo Brothers, Inc.*, 10 Pa. Commonwealth Ct. 86, 309 A.2d 84 (1973). I believe that we have clarified this issue in *Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck and Co.)*, 75 Pa. Commonwealth Ct. 504, 462 A.2d 909 (1983), where the claimant contended that there should be included in the amount of the average weekly wage "promised salary increases, mileage reimbursements and fringe benefits . . . ;" and we there stated:

> While board and lodging received from the employer and tips and gratuities equalling at least one-third of an employe's remuneration are specifically designated as wages under Section 309(e), the subsection omits any reference to the inclusion of prospective salary increases, mileage reimbursements and fringe benefits as wages. Guided by the maximum 'expressio unius est exclusio alterius' (that is, where certain things are specifically designated in a statute, all omissions should be understood as exclusions) we must conclude that the Legislature, by omitting any reference to promised salary increases, mileage

---

[9] The present provision allowing tips to be included in certain occupations was then absent from Section 309.

reimbursements and *fringe benefits* from the computation of wages under Section 309(e), sought to exclude these items from wage computation. See, Latella v. Unemployment Compensation Board of Review, 74 Pa. Commonwealth Ct. 14, 459 A.2d 464, 473 (1983). (Emphasis added.)

*Id.* at 509-510, 462 A.2d at 912.

While we are not here ruling, since a remand is required as previously indicated, we do not wish to appear to have indicated that the amount paid for vacation actually taken during a relevant wage period is not includable in the basis for computation under Section 309, nor would the amount received for a holiday paid for during a working period be excluded. What we believe may be contrary to the intent of the Legislature is that an average weekly net wage may be increased by payments never received during the relevant work period or which were not paid for days that otherwise would have been worked during such computation period. For example, let us suppose that the Claimant here drew down vacation and holiday pay to which he was entitled under an employment agreement because he was retiring. Although he is entitled to such monies, despite being unable to take a vacation or a holiday because no further work periods following retirement would be available to him, such monies could not be added to create an artificially high quarter whether it be the last two quarters or any other quarter during the computation period. Such a result, in our view, would be contrary to the legislative intent as expressed in the above-quoted provision in Section 309 that the average weekly wage for compensation purposes be solely based upon money *earned* during the period providing the basis for the computation.

For the reasons stated, we will affirm the referee's partial disability determination, but remand as to the determination of the average weekly wage.[10]

ORDER

Now, September 21, 1987, the decision of the Workmen's Compensation Appeal Board, No. A-89506, dated March 28, 1986, is hereby affirmed as to the determination of Claimant's state of disability, but the case is remanded for further proceedings in order to determine whether or not the weekly disability rate of $306.00 as stated in the Notice of Compensation Payable is based upon an average weekly wage that is correctly computed under Section 309 of The Pennsylvania Workmen's Compensation Act.

---

[10] We note that review of agreements would normally be proceeded with under the first paragraph of Section 413(a) of the Act, 77 P.S. §771. No such petition has been filed by Claimant who would, of course, have the burden of proof to establish change, but this issue has not been raised and the usual liberality accorded to the treatment of petitions may prevail here. *See Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Pecora)*, 82 Pa. Commonwealth Ct. 538, 475 A.2d 972 (1984).