615 A.2d 975

**LANE ENTERPRISES, INC. and Commercial Union Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Audley K. PATTON), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 15, 1992.

Decided Sept. 8, 1992.

P. Ronald Cooper, for petitioners.

William G. Cohen, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Lane Enterprises, Inc. and its insurer Commercial Union Insurance Company (collectively referred to hereafter as Lane) petition for review of an order of the Workmen's Compensation Appeal Board (Board) that dismissed the appeal of Lane and affirmed the decision of the referee which had granted a petition that modified the compensation benefits of Audley K. Patton (Patton) pursuant to Section 413 of The Pennsylvania Workmen's Compensation Act[1] (Act), 77 P.S. § 772. We affirm.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

Patton worked as a welder for Lane until April 24, 1987 when he developed a work-related disability from exposure to zinc fumes. A notice of compensation payable issued on November 28, 1988 whereby Lane agreed to pay Patton, based on an average weekly wage of $470.65, total disability benefits at a rate of $313.77 per week.

Affixed to the notice of compensation payable was a statement of wages which reflected on a quarterly basis, pursuant to Section 309(d) of the Act, 77 P.S. § 582(d), Patton's wages for the entire year preceding the date of his injury.[2] Included in the statement of wages was a $2,750.00 bonus payment for the year 1986 paid to Patton by Lane on February 27, 1987. In calculating Patton's benefits, the $2,750.00 bonus payment was prorated into four 13 week wage periods by dividing the payment by the 198 days Patton had worked in those four periods and then multiplying that figure by the actual number of days worked in each period.

On October 20, 1989, Patton filed a petition to review the notice of compensation payable pursuant to Section 413 of the Act, 77 P.S. § 772, contending that the average weekly wage and the compensation rate were materially incorrect because the bonus payment should have been included as wages only in the quarter in which it was paid instead of as set forth in the statement of wages. Patton argues that if the entire $2,750.00 bonus were attributed to the fourth quarter when it was paid, his earnings for the last two completed quarters would be $8,206.32, yielding an average weekly wage of $603.41 and entitling him to benefits at a rate of $377.00 per week, rather than the $313.77 rate he is receiving under the notice of compensation payable.

**2.** Patton's statement of wages provides in part the following pertinent figures:

|  | From | To | Wages | Days Worked |
|---|---|---|---|---|
| 1st period | 4/24/86 | 7/24/86 | $6,118.45 | 65 |
| 2nd period | 7/24/86 | 10/24/86 | $6,118.45 | 65 |
| 3rd period | 10/24/86 | 1/24/87 | $2,823.90 | 30 |
| 4th period | 1/24/87 | 4/24/87 | $3,576.94 | 38 |

Lane also filed a petition to review notice of compensation payable seeking to reduce the amount of benefits. Lane contended that the bonus payment did not reflect the true earnings of Patton as defined in Section 309 of the Act, 77 P.S. § 582, and should not have been included as wages. Lane maintains that removal of the bonus payment from wages results in an average weekly wage of $401.21 for Patton, yielding a benefit of $267.47 per week. The essence of Lane's argument was that the average weekly wage of $460.65 as stated in the notice of compensation payable was artificially inflated in that it erroneously included the bonus payment as wages.

After a series of hearings on the respective petitions, the referee rendered a decision and order on April 20, 1990 which dismissed the petition of Lane and granted the petition of Patton and modified the notice of compensation payable to show an average weekly wage of $634.05 and a weekly disability rate of $361.00.

Lane appealed[3] to the Board alleging that the referee committed an error of law in concluding that the bonus payment was wages within the meaning of Section 309 of the Act, 77 P.S. § 582. Lane also asserted, in the alternative, that even if the bonus payment was properly considered as wages, the referee erred by determining that the payment should be considered as part of the wages for the quarter during which it was paid, as opposed to being allocated over the entire year in which it was earned.

The Board affirmed the decision of the referee and dismissed Lane's appeal. The Board determined that the referee had adequate and substantial evidence upon which he could conclude that the bonus payment was to be included in the calculation of wages in the quarter in which it was paid and not prorated over the entire year prior to the injury.[4]

3. Patton also appealed to the Board on grounds other than the grant of the modification of his benefits. The Board dismissed his appeal. Patton did not appeal the Board's decision.

4. Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether neces-

The issue for our determination is whether a bonus paid within the year prior to a disabling injury is wages for the purpose of calculating benefits and, if so, must the bonus be allocated equally over the year preceding the disabling injury or may the bonus be applied as wages only to the quarter in which it was paid. We first address whether a bonus payment is wages.

■ Lane contends that the referee erred by concluding that the $2,750.00 bonus payment was wages within the meaning of Section 309 of the Act, 77 P.S. § 582. The term "bonus" is not contained within Section 309 of the Act nor is it defined in the Act's definitional section. Lane argues that the omission of the term "bonus" from Section 309 of the Act evidences the Legislature's intent to exclude bonuses from the computation of wages.

Section 309(d) of the Act, 77 P.S. § 582(d), provides as follows:

(d) If at the time of the injury the wages are fixed by the day, hour, or by the output of the employe, *the average weekly wage shall be the wage most favorable to the employe,* computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury, or in case the employe receives wages, monthly or semi-monthly, by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of three consecutive calendar months in the year immediately preceding the injury; ... (Emphasis added.)

Since the term "wages" is not specifically defined by the Act, we are directed by the Statutory Construction Act, 1

sary findings of fact are supported by substantial evidence. *Ashe v. Workmen's Compensation Appeal Board (American Steel & Aluminum Corporation,* 140 Pa.Commonwealth Ct. 615, 594 A.2d 824 (1991). Substantial evidence exists when there is relevant evidence in the record which a reasonable person might accept as supporting the conclusion. *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service),* 95 Pa.Commonwealth Ct. 158, 504 A.2d 985 (1986).

Pa.C.S. §§ 1501–1991, to construe the term according to rules of grammar and according its common and approved usage. 1 Pa.C.S. § 1903(a). The term "wage" is defined by Webster's Third New International Dictionary 2568 (15th ed. 1966) as follows:

1a: a pledge or payment of usually monetary remuneration by an employer especially for labor or services usually according to contract and on an hourly, daily, or piecework basis and often including *bonuses,* commissions, . . . . (Emphasis added.)

Black's Law Dictionary 1579 (6th ed. 1990) defines "wages" as follows:

A compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production.

Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, *bonuses* and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him. *Ernst v. Industrial Commission,* 246 Wis. 205, 16 N.W.2d 867. Term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to manner in which such compensation is computed. *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 24 Cal.App.3d 35, 100 Cal. Rptr. 791, 797. (Emphasis added.)

While not dispositive of the issue at hand, it is significant to note that the Department of Labor and Industry has defined the term "wages" in a different context. A regulation promulgated under the Equal Pay Law, Act of December 17, 1959, P.L. 1913, *as amended,* 43 P.S. §§ 336.1–336.10, defines "wages" as follows:

When used in this subchapter, the term "wages" shall mean *every form of remuneration or compensation for work* or labor performed or services rendered and includes, but is not limited to salary, commissions, drawing account, piece

rates, stock option plans, profit sharing plan, and *bonuses,* unless the context clearly indicates otherwise. (Emphasis added.)

34 Pa.Code § 9.61.

Also of note is the fact that the statement of wages form[5] provides for the inclusion of overtime and bonuses in the calculation of the average weekly wage if the wages are fixed by day, hour, or output. Here, Patton was paid on an hourly basis and the bonus payment was included in the calculation of his benefits. Accordingly, since Section 309(d) of the Act provides that the average weekly wage shall be "the wage most favorable to the employe," we are persuaded from the foregoing that the common and approved usage of the term "wages" includes bonuses; thus, the referee did not err by concluding that the bonus payment constituted wages within the meaning of Section 309 of the Act.

Lane further argues that prior case law has held that a bonus may constitute wages only if there is a contractual obligation to pay it. *See Orlando v. Schiavo Brothers, Inc.,* 10 Pa.Commonwealth Ct. 86, 309 A.2d 84 (1973); *Chubb v. Allegheny Country Club,* 147 Pa.Superior Ct. 146, 24 A.2d 550 (1942). Lane maintains that there was no contractual obligation to pay a bonus in the case at hand and that our courts have never endorsed the inclusion of a bonus in the computation of wages where there did not exist a contractual obligation for payment of the same.

Lane's argument is premised upon the uncontested findings of the referee summarized in pertinent part as follows:

1. The bonus was not paid under any verbal or written contract;
2. The amount of the bonus varies from year to year and need not be paid;
3. The payment and amount of each bonus is decided by Lane Enterprises Board of Directors, after recommendations made by a compensation committee composed of three corporate officers;

5. OIDC–494 (8/72) *as amended* 6–91.

4. The bonus has never been paid in lieu of wage increases or referred to as wages;

5. The bonus was paid on February 27, 1987 and this bonus was based upon Lane Enterprises profits and performance during 1986.

Lane contends that the findings of the referee establishes that it had complete, unfettered discretion in determining whether a bonus would be paid; thus any such payment would, at best, constitute a gratuity. Section 309(e) of the Act, 77 P.S. § 582(e), excludes the inclusion of gratuities in the wage calculations except in those occupations where employees customarily receive at least one-third of their remuneration in that form. The referee found the bonus payment to constitute 17.3% of Patton's hourly wages earned in the four quarters preceding the date of injury which obviously is less than one-third.

The referee concluded that the case of *Orlando v. Schiavo Brothers, Inc.,* 10 Pa.Commonwealth Ct. 86, 309 A.2d 84 (1973) was factually distinguishable from the case at hand and therefore was not controlling. We agree. In *Orlando,* the claimant suffered a work-related injury on February 28, 1967 for which he was awarded benefits by voluntary agreement. On June 12, 1967, claimant was paid a bonus which was not included in calculating his benefits. In denying the claimant's attempt to have his average weekly wage modified to reflect his receipt of the bonus, the *Orlando* court noted that the bonus was paid to the claimant some 3½ months after the disabling injury and that there was no contractual obligation on the part of the employer to pay a bonus, and there was no formula to determine the amount and payment date of a bonus. Instead, the employer had "complete, unfettered discretion whether it [bonus] would be paid at all."

As we interpret *Orlando* and Section 309 of the Act, the only definitive wage for purposes of calculating benefits is that earned during the four 13 week periods preceding the date of the injury. The fact that Lane had no contractual obligation to pay Patton a bonus is of no consequence since Patton had received such a bonus during the fourth quarter of the year

preceding his injury. Patton received his bonus on February 27, 1987 and was injured on April 24, 1987. Thus, the payment and receipt of the bonus occurred during the period in which benefits are to be calculated under the Act. Accordingly, the referee committed no error by including the bonus payment when calculating Patton's average weekly wage.

As to the allocation of the bonus, Lane argues that the referee erred by concluding that the bonus payment should be considered as part of the wages during the quarter which it was paid, as opposed to being allocated over the entire year in which it was earned. The Board noted that the referee's treatment of the bonus payment was similar to this Court's treatment of a lump sum payment of vacation pay in *Boro of Midland v. Workmen's Compensation Appeal Board (Granito)*, 127 Pa.Commonwealth Ct. 462, 561 A.2d 1332 (1989).

In *Boro of Midland*, the court had to determine whether in the calculation of the average weekly wage, the decedent's vacation pay should have been included in the quarter in which it was actually paid or prorated over the entire year prior to the decedent's injury. The court noted that Section 309(d) of the Act, 77 P.S. § 582(d), contains no express provision indicating wages should be prorated throughout the year, rather than included in a particular quarter; that the employer had treated the vacation pay as wages during the fourth quarter; and that the Act is remedial legislation which is to be construed in the light most favorable to the claimant. We note that Section 309(d) specifically provides that "the average weekly wage shall be the wage *most favorable* to the employee." (Emphasis added.) The referee in determining that the average weekly wage most favorable to Patton resulted in allocating the bonus to the fourth quarter did not commit error. Accordingly, the order of the Board will be affirmed.

## ORDER

AND NOW, this 8th day of September, 1992, the order of the Workmen's Compensation Appeal Board, dated June 25, 1991, is affirmed.