**PHILIP MORRIS/KRAFT FOODS, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (LEVAN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 6, 1996.

Decided Jan. 29, 1997.

Stephen A. Sheinen, Philadelphia, for petitioner.

John D. Levan, Reading, for respondent.

Before COLINS, President Judge, PELLEGRINI, J., and LORD, Senior Judge.

LORD, Senior Judge.

Philip Morris/Kraft Foods, Inc. (employer) petitions this Court for review of a Workmen's Compensation Appeal Board (Board) order that affirmed a Workers' Compensation Judge's (WCJ) decision granting claimant Susan Levan's claim petition and awarding her benefits based on an average weekly wage of $702.39, which included a business expense allowance.[1]

The WCJ rendered findings of fact, from which we derive the following. Levan filed a claim petition alleging that, in about February 1993, she had suffered a work-related herniated disc at C5–6. Levan had to set up displays of food in the course of her work, which activity included lifting forty-pound cases from a skid, shelving six to eight pound cans, and reaching overhead. Levan began having pain in her left shoulder radiating into her arms and told Teresa Brook, a secretary for the employer, that the pain arose while doing set-ups.

Dr. Stanley Grabias first treated Levan for these symptoms on March 12, 1993, and Levan informed Joseph McCaffrey, who also worked for the employer, that she had treated with a physician. Levan notified Gregory Scott DeBoer, her immediate supervisor, of her pain. She completed a disability certificate and attached a note from Dr. Grabias, giving this documentation to DeBoer. Levan continued working, but asked for help in establishing displays, until June 1, 1993, when she could no longer work due to her pain symptoms.

In support of her claim petition, Levan adduced the medical testimony of Dr. Grabias, who opined that work-related conditions—that is, driving and lifting produce out of her trunk—aggravated Levan's symptomatology. To support its position, the employer presented the testimony of Dr. Ellis Friedman, who opined that Levan's physical condition resulted from degeneration rather than trauma. Both parties also presented the testimonies of various lay witnesses, employees of Kraft. The WCJ found credible all of the lay witnesses presented by Levan, and did not credit the testimonies of the employer's two lay witnesses. The WCJ also found the testimony of Dr. Grabias, Levan's treating physician, to be more credible than the testimony of Dr. Friedman. The WCJ then ordered the employer to pay Levan, *inter alia*, compensation at a rate based on

---

**1.** The relevant statute is the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as* amended, 77 P.S. §§ 1–1041.4.

an average weekly wage which included her business expense allowance.

■ After the Board affirmed the WCJ's decision, the employer filed a petition for review with this Court. In its statement of questions involved, the employer now queries: 1) whether the WCJ erred in including Levan's business expense allowance in the calculation of her average weekly wage; 2) whether the WCJ erred in not concluding that Levan's business expenses exceeded the employer's monthly allowance; and 3) whether substantial evidence supports the WCJ's decision and whether that decision was a reasoned decision in accordance with Section 422(a) of the Act, 77 P.S. § 834.[2]

■ We first address the employer's contention that the WCJ's decision was not supported by substantial evidence and was not a reasoned decision within the meaning of section 422(a). That section provides in part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The adjudicator shall specify the evidence upon which the adjudicator relies in conformity with this section. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834.

According to the employer, the WCJ credited the various testimonies of witnesses who contradicted one another, also credited Levan's inherently inconsistent testimony, and failed to address or reconcile the conflicts in doing so. The employer argues that, due to the many inconsistencies which the WCJ did not resolve, the evidence does not substantially support the WCJ's findings, and the WCJ's decision falls short of being a reasoned one as required by the Act.

We do not agree with the employer that the WCJ's decision fails to comply with Section 422(a) of the Act. In this case, the WCJ specifically set forth what testimony he believed and what testimony he did not believe. While, admittedly, the testimonies credited by the WCJ have some inconsistencies, the WCJ obviously discounted these minor conflicts in reaching his decision in Levan's favor.

In *Sherrod v. Workmen's Compensation Appeal Board . (Thoroughgood, Inc.)*, 666 A.2d 383, 385–386 (Pa.Cmwlth.1995) (citations omitted) (footnote omitted) (emphasis added), this Court stated:

> The authority of the Judge over questions of credibility, conflicting medical evidence, and evidentiary weight is unquestioned.... *Section 422(a) does not require that a Judge set forth in detail the process by which he arrived at such a determination. It is sufficient that he state in a clear and concise manner what the determination was....*

■ Of course, it is Levan's burden to prove that the injury occurred in the course of her employment and was related thereto, *Westinghouse Electric Corp. v. Workmen's Compensation Appeal Board (Kloshen)*, 167 Pa.Cmwlth.303, 648 A.2d 83 (1994). That said, a review of the record satisfies us that substantial evidence supports the WCJ's credibility determinations. Moreover, the fact that the testimonies credited by the WCJ varied in ways which the WCJ considered immaterial to his decision does not render his determination inadequate. Since the WCJ's decision "provide[d] the basis for meaningful appellate review[,]" 77 P.S. § 834, we will reject the employer's argument that the WCJ's decision was not reasoned. *See also Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995).

■ Next, we consider the employer's questions with respect to the WCJ's calculation of Levan's average weekly wage.[3]

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were unsupported by substantial evidence. *Russell v. Workmen's Compensation*

*Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

**3.** Section 309(e) of the Act, 77 P.S. § 582(e) provides in relevant part:

While our research reveals no authority which controls these precise issues, we note that section 309(e) includes as wages board and lodging received from the employer and, in certain circumstances, gratuities. It does not include as wages money paid out by the employer for the nebulous term "business expenses."[4] For this reason, we decide that a presumption exists that money received from the employer to cover "business expenses" is not to be calculated as part of a claimant's "average weekly wage" or "total wages" under section 309(e). For example, in *Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck & Co.)*, 75 Pa. Cmwlth.504, 462 A.2d 909 (1983), we concluded, *inter alia*, that mileage reimbursement should not be considered in the calculation of a claimant's average weekly wage. Even so, we hold today that a claimant may overcome the presumption against money paid by the employer for "business expenses" being wages if he or she can show from income tax returns that not all of the money designated to cover business expenses actually went to those expenses, but that some money actually remained to be spent by the employee for his or her personal use.

> The terms "average weekly wage" and "total wages," as used in this section, shall include board and lodging received from the employer, and in employments in which employes customarily receive not less than one-third of their remuneration in tips or gratuities not paid by the employer, gratuities shall be added to the wages received but such terms shall not include amounts deducted by the employer under the contract of hiring for labor furnished or paid for by the employer and necessary for the performance of such contract by the employe, nor shall such terms include deductions from wages due the employer for rent and supplies necessary for the employe's use in the performance of his labor.

4. Gregory Scott DeBoer, Levan's supervisor who testified for the employer, stated that Levan was given a business expense allowance "to reimburse all business expenses that could occur during the month of her employment, including car, phone, tolls, any incidentals that would come up." (Notes of Testimony (N.T.), Testimony of Gregory Scott DeBoer, June 21, 1994, p. 12). The WCJ did not accept DeBoer's testimony, however, so we are left with only Levan's testimony as to what the business expense allowance was for, and this testimony is rather sketchy. (*See* N.T., Testimony of Susan Levan, November 15, 1993, p. 13).

In their briefs, the parties seem to concur that Levan's monthly business expense allowance was five hundred dollars. However, the WCJ made no findings with respect to how Levan actually spent the money her employer provided for business expenses. Instead, he merely included this money in the calculation of her average weekly wage, citing *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 150 Pa.Cmwlth. 395, 615 A.2d 975 (1992) (*Lane I*), a case involving the question of whether a bonus paid in the year before a claimant's disabling injury constituted wages for the calculation of benefits; and, if it did, whether the bonus should have been applied equally over the course of the year before the disabling injury occurred or to the quarter in which it was paid to the claimant.[5] Neither *Lane I* nor *Lane II* controls this issue of business expenses, however, and we now remand this case to the Board for remand to the WCJ for a determination as to how much of her monthly business expense allowance—if any—Levan had available for her own personal use, so that any money so utilized can be calculated as wages under the Act.[6]

5. In *Lane I*, we affirmed the Board's order upholding a referee's decision that a bonus payment constituted wages and that it should have been considered as wages during the quarter in which it was paid. The Pennsylvania Supreme Court reversed our decision in *Lane I* on the issue of how the bonus should have been allocated. *See Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994) (*Lane II*).

6. Although we are aware of *Nortim, Inc. v. Workmen's Compensation Appeal Board (Rolick)*, 150 Pa.Cmwlth.196, 615 A.2d 873 (1992) and *Adams v. Workmen's Compensation Appeal Board (Frank D. Suppa Logging)*, 107 Pa.Cmwlth.30, 527 A.2d 625 (1987), cited in both parties' briefs, these cases are not precisely on point. In *Nortim*, the claimant, a logging contractor for the employer, received wages based on his production output, and he paid his business expenses after he received remuneration from the employer based on that output. In *Adams*, the claimant, a logger, received fixed weekly wages and then money from the employer for equipment rental, an amount which varied according to the number of days that he worked. Here, it appears Levan received a fixed salary *and a fixed amount for business expenses*—whether she spent her entire business expense allowance on business expenses or not. Nevertheless, we rely on *Nortim* for the

As this fact can best be discovered by a review of Levan's income tax returns, we direct the WCJ to re-open the record so that Levan can produce the relevant returns in accordance with the employer's previously issued subpoena. Nonetheless, we disagree with the employer that the WCJ should have granted its request for a negative inference to be accorded Levan's failure to produce her subpoenaed tax returns.[7] If in fact, as the employer contends, Levan's tax returns show that her business expenses exceeded the expense allowance and that, consequently, she claimed a deduction, Levan's business expense allowance should not be calculated as part of her average weekly wage.

Accordingly, we reverse the Board's order and remand this case to the Board for remand to the WCJ, so that the WCJ can direct Levan to produce her relevant income tax returns, and so that the WCJ can determine whether Levan spent all of her business expense allowance on business expenses or whether she had available any remaining portion for personal matters. Consistent with this opinion, the WCJ may construe as wages under the Act any money the employer designated for business expenses which may have remained for Levan's personal use.

### ORDER

AND NOW, this 29th day of January, 1997, the order of the Workmen's Compensation Appeal Board, No. A95–0209, dated June 21, 1996, is hereby reversed, and the case is remanded to the Board for remand to the WCJ so that he can direct Levan to produce her relevant income tax returns, and so that he can determine whether Levan spent all of her monthly business expense allowance on business expenses or whether some of that allowance remained for her personal use.

Jurisdiction relinquished.

certain proposition that a claimant's *net* earnings should be used in order to calculate his or her wages.

**7.** Levan points out that the employer similarly ignored her subpoena of its tax returns, but we really do not see, contrary to her assertions in her brief, how the employer's production of its tax returns could possibly aid the WCJ's determination of Levan's average weekly wage.