561 A.2d 1332

**BORO OF MIDLAND and General Accident Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GRANITO), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 2, 1989.

Decided July 31, 1989.

Charles G. Brown, Dickie, McCamey & Chilcote, Pittsburgh, for petitioners.

Alexander J. Pentecost, Amiel B. Caramanna, Jr., Pittsburgh, for respondents.

Before CRUMLISH, Jr., President Judge., COLINS, J. and NARICK, Senior Judge.

COLINS, Judge.

The Boro of Midland (Boro) and General Accident Insurance Company (collectively, petitioners) petition for review of an order of the Workmen's Compensation Appeal Board which affirmed a decision of the referee awarding compensation to Rose Granito (claimant) pursuant to a review petition filed by claimant. We affirm.

The decedent, Felix Granito, died on May 8, 1985, as a result of multiple trauma sustained while in the course of his employment with the Boro. Pursuant to a Notice of Compensation Payable filed by the Boro on August 13, 1985, claimant was paid compensation at a rate of $256.05 per week beginning on May 10, 1985.

On July 12, 1985, claimant filed a review petition of the Notice of Compensation Payable on the basis that the average weekly wage had been incorrectly calculated. Claimant contended that pursuant to Section 309(d) of The Pennsylvania Workmen's Compensation Act (Act),[1] vacation pay of $3,062.00 paid to the decedent on June 29, 1984 should have been included in the gross pay for the fourth quarter prior to the decedent's death, rather than prorated over the entire year, as the petitioners had done when calculating the average weekly wage.

Hearings were held before a referee, although no testimony was taken by either party throughout the proceedings. In rendering his decision, the referee found that the wage transcript of the decedent which was submitted to General Accident Insurance Company clearly indicated that the va-

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582(d).

cation pay was included in his fourth quarter wages. The referee noted that this payment was paid almost a year prior to his death and obviously the various tax and social security deductions were deducted from said amount at that time. The referee found that the employer's wage transcript was correctly based upon wages paid to the decedent in the four quarters preceding his injuries and death. Finally, the referee found that the decedent's fourth quarter wages, including the vacation pay, totalled $8,220.30 and were decedent's highest quarterly wages. This translated into an average weekly wage of $632.33 and a compensation rate of $336.00 per week. Accordingly, the referee issued a decision granting claimant's petition and modifying the Notice of Compensation Payable.

On appeal, the Board affirmed the decision of the referee on the basis that the vacation pay was properly included in the fourth quarter wages preceding the decedent's injury, rather than prorated over the entire year. Petitioners now appeal the Board's decision to this Court.

The issue for review is one of first impression before this Court. We must determine whether in the calculation of the average weekly wage, decedent's vacation pay should have been included in the fourth quarter or prorated over the entire year prior to the decedent's injury.[2]

Section 309(d) of the Act contains no provision for the prorating of wages paid in any particular quarter. The Board, in rendering its decision, chose to treat the vacation pay just as the employer had treated it in its wage transcript. That document clearly indicates that the fourth quarter wages included the vacation pay. The Board noted the referee's finding of fact that this payment was made almost one year prior to decedent's death and that the various tax and social security deductions were allocated at the time of the payment.

**2.** Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or the findings of fact are supported by substantial evidence. *Beebe v. Workmen's Compensation Appeal Board (Bendix Corp.)*, 112 Pa.Commonwealth Ct. 578, 535 A.2d 1236 (1988).

■■■ We agree with the Board that the referee made no error in allocating the vacation pay to the fourth quarter in his calculation of the average weekly wage. Considering the fact that there is no explicit direction in Section 309(d) of the Act, and the fact that the employer treated the vacation pay as wages in the fourth quarter, we must conclude that the inclusion of the vacation pay in the last quarter was proper.[3]

Petitioners contention that this vacation pay was earned in 1983 and should therefore not be included at all in the computation of average weekly wage is not supported by evidence of record. The only evidence presented by petitioner to support this contention was the statement of its attorney before the referee to the effect that the vacation pay was earned in 1983 but paid out in 1985. Absent any concrete evidence in the record to bolster this contention, we must dismiss it as meritless.

■■■ In closing, we note that the Act[4] is remedial legislation which is to be construed in the light most favorable to the claimant. There is no express provision in Section 309(d) of the Act indicating that vacation pay should be prorated throughout the year, rather than included in a particular quarter. It is not the province of this Court to read such a provision into the Act, especially where it would work to reduce the average weekly wage of claimant.

In accordance with the foregoing opinion, the order of the Board is affirmed.

## ORDER

AND NOW, this 31st day of July, 1989, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

3. It is undisputed that vacation pay is earned and should be included in the calculation of the average weekly wage. *See generally Temple v. Pennsylvania Department of Highways*, 445 Pa. 539, 285 A.2d 137 (1971) (Pennsylvania Supreme Court notes that sick pay *like vacation pay* is an incident or benefit provided for by the work agreement and is an entitlement like wages for work performed.)

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.