**ELJER INDUSTRIES and the Travelers Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (JOHNSON), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 1995.
Decided Jan. 4, 1996.

F. David Dermotta, for petitioners.

Daniel K. Bricmont, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

Eljer Industries and the Traveler's Insurance Company (collectively, Employer) petition for review of an order of the Workmen's Compensation Appeal Board which affirmed a referee's decision granting the reinstatement petition of Timothy Johnson (Claimant) under the Workers' Compensation Act (Act).[1]

Claimant sustained an injury to his lower back while working as a "slip hustler" for Employer on April 3, 1991. By a notice of compensation payable dated May 10, 1991, Claimant received benefits of $270 per week based on an average weekly wage of $405 per week. He subsequently returned to work in a light duty capacity and by a supplemental agreement dated April 15, 1992, compensation benefits were suspended. On January 11, 1993, Claimant filed a reinstatement petition in which he alleged that he had suffered a loss of earnings when he returned to work and was therefore entitled to partial disability benefits under Section 306(b) of the Act.[2] Employer filed a response denying that Claimant had experienced a loss in wages when he returned to work.

The dispute between Claimant and Employer does not involve a disagreement concerning the underlying facts of Claimant's disability, but rather, involves a purely legal question relating to the calculation of Claimant's average weekly wage. Under the Collective Bargaining Agreement (CBA) in effect between Claimant's union and Employer, Claimant was entitled to vacation and holiday pay based on a percentage of his wages earned the previous year.[3] The CBA provided that members of the Union, which included Claimant, could either receive their annual vacation pay in a lump sum on January 31st or elect to have it deferred until the time when their vacation actually occurred.[4] At hearings before the referee, Claimant argued that the lump sum payments for his holiday and vacation pay should have been included in the computation of his average weekly wage at the time of their actual payment. Conversely, Employer argued that, despite being paid in a lump sum, such payments were, and should be prorated over the entire year. By an order dated January 11, 1993, the referee ruled in favor of Claimant and directed Employer to recalculate Claimant's average weekly wage by including the lump sum payments for vacation and holiday pay as wages at the time of their actual payment, that is, January 31, 1991 for the vacation pay and November 21, 1990 for holiday pay.

Employer appealed the referee's decision to the Board, and the Board affirmed. Employer then filed a petition for review with this Court. In a panel decision of this Court,[5] we affirmed the order of the Board relying on our opinion in *Boro of Midland v. Workmen's Compensation Appeal Board (Granito)*, 127 Pa.Cmwlth. 462, 561 A.2d 1332 (1989). On February 25, 1995, Employer applied for reargument before the Court *en banc* on the grounds that our decision was contrary to the rationale of the Supreme Court's decision in *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994). Employer subsequently filed a supplemental application for reargument in which it argued

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

2. 77 P.S. § 512.

3. The number of weeks of vacation and the percentage used in calculating the vacation pay of employees varied depending on length of service. The percentage used to calculate vacation pay varied between 2% and 12%, while holiday pay was paid at a straight 3.75% (for 10 holidays) of the previous years wages for all eligible employees. (CBA at 36–37, Employer's Exhibit No. 1; Reproduced Record (R.R.) at 44a–45a.)

4. Unlike vacation pay, holiday pay was always paid in a lump sum on the day before Thanksgiving; employees did not have the option of receiving holiday pay when the holidays actually occurred.

   We note that the CBA which Employer entered into evidence in this case did not actually go into effect until May 28, 1992, thirteen months after Claimant was injured. However, the language of the 1992 CBA, as well as the testimony of Employer's own witnesses, establish that the provisions governing vacation and holiday pay under the prior CBA, effective May 28, 1988 to May 28, 1992, are the same as under the new 1992 CBA.

5. *Eljer Industries v. Workmen's Compensation Appeal Board (Johnson)*, 1995 WL 59584, (Pa. Cmwlth.) (No. 1434 C.D.1994, filed February 13, 1995).

that our earlier decision in this case was also contrary to our recently published opinion in *Exide Corp. v. Workmen's Compensation Appeal Board (Kamenas)*, 653 A.2d 50 (Pa. Cmwlth.1994).[6] By an order dated April 13, 1995, we granted Employer's application for reargument and withdrew our prior opinion and order entered in this case.[7]

The sole issue before the Court [8] is whether, when calculating an employee's average weekly wage, vacation and holiday pay which is paid in a lump sum at a time other than when the holiday actually occurs or when the vacation is actually taken, should be included as wages on the date the compensation is in fact *paid,* or, should be prorated throughout the period when such compensation is actually *earned.*

In *Boro of Midland,* we held that vacation pay should be treated as having been *earned* in the quarter in which it is actually *paid* for the purposes of calculating an employee's average weekly wage under Section 309(d) of the Act, 77 P.S. § 582(d).[9] However, Employer argues that the holding in *Boro of Midland* is contrary to the Supreme Court's decision in *Lane Enterprises* and this Court's own recent decision in *Exide Corp.*

Succinctly, in *Boro of Midland,* the claimant's husband, Felix Granto, died in May of 1985 and his vacation pay of $3,062 for *1984,* as shown on the employer's wage transcript, was paid on June 29, 1984, which was during the decedent's highest quarter of his last five completed calendar quarters prior to the decedent's death. *See* Section 309(f) of the Act, 77 P.S. § 582(f). Employer argued that this vacation pay was actually earned in *1983* and, by prorating the entire sum over the four calendar quarters in 1983, should not have been included at all in the decedent's average weekly wage. We affirmed the referee's determination that the decedent's vacation pay was properly included in the actual calendar quarter when it was paid, noting that the employer itself treated the vacation pay as wages earned as well as paid in 1984, deducting the applicable income and social security taxes from such wages for that year, *i.e.,* 1984.

In *Lane Enterprises,* the Supreme Court held that an annual bonus, calculated on the basis of yearly performance, should be prorated over the entire year in which it was earned rather than included as part of the claimant's wages for the quarter in which it was paid. The Supreme Court determined that since an annual bonus is similar to a yearly wage which, for purposes of calculating a claimant's average weekly wage, is calculated by dividing the yearly wage by fifty-two (weeks) pursuant to Section 309(c) of the Act,[10] it would be illogical to treat an annual bonus differently from a yearly wage. In reaching its decision, however, the Supreme Court specifically refrained from making a ruling regarding vacation pay and concluded as follows:

> Although we are declining to follow the rationale of *Boro of Midland* in this appeal, this opinion should not be construed

---

6. Although decided in 1994, the opinion in *Exide Corp.* was not ordered to be published until January 25, 1995.

7. Under Pa.R.A.P. 3723, this Court may grant reargument *en banc* for "compelling and persuasive reasons."

8. Since the determination of a claimant's average weekly wage is a question of law, it is fully reviewable by this Court. *Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck and Co.),* 104 Pa.Cmwlth. 175, 521 A.2d 503 (1987), *petition for allowance of appeal denied,* 516 Pa. 644, 533 A.2d 714 (1987).

9. Section 309(d) states in pertinent part:

> If at the time of the injury the wages are fixed by the day, hour, or by the output of the employe, the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury, or in case the employe receiving wages, monthly or semi-monthly, by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of three consecutive calendar months in the year immediately preceding the injury; ...

> 77 P.S. § 582(d).

10. 77 P.S. § 582(c). Section 309(c) provides: "If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two."

as a definitive ruling that vacation pay must be allocated throughout the year rather than the quarter it is paid. Since the issue of vacation pay is not before us, we will leave that determination for another day.

*Lane Enterprises* 537 Pa. at 430–31 n. 2, 644 A.2d at 728 n. 2. "That day" has now arrived.

In *Exide Corp.*, we reversed the Board's determination and held that the claimant's vacation pay should not be included in the quarter in which it was paid, and should be prorated throughout the entire year. We found that the facts as determined by the referee clearly showed that the vacation pay was attributable to work performed during the entire year. Furthermore, we distinguished our decision in *Boro of Midland* from the facts before us in *Exide Corp.* on the grounds that the employer in *Boro of Midland* had treated the vacation pay as wages in the quarter when they were actually paid and had failed to present any concrete evidence showing that the vacation pay was in fact earned **during the previous year** as opposed to the period within which it was actually paid. Moreover, the *Exide Corp.* panel held that "the term 'annual vacation pay' by definition would indicate that the pay is attributable for work performed for the entire year." *Exide Corp.*, —— Pa.Cmwlth. at ——, 653 A.2d at 51.

Although *Lane Enterprises* is not directly controlling because it did not deal with vacation and holiday pay, but with an annual bonus, we believe there is no cogent reason for treating the vacation pay *at issue in this case* differently from the annual bonus paid in *Lane Enterprises*. The terms of the CBA in this case establish that Claimant's vacation pay was based on "the previous calendar year's regular earnings." (CBA at 36; R.R. at 44a.) An employee is paid his vacation pay either on January 31st or, at the employee's option, when he actually takes his vaca-

tion. However, no matter when the employee chooses to receive this vacation pay, he actually earns that vacation pay during the course of the previous year. Therefore, we conclude that Claimant's vacation pay must be prorated over the entire year for the purpose of calculating his average weekly wage.

■ We are mindful that the Act is remedial in nature and is to be liberally construed for the benefit of employees. *Lane Enterprises*. However, we cannot ignore the basic fact that Claimant's vacation pay in this case was essentially earned during the entire preceding year. Although our decision will undoubtedly result in a small diminution in benefits for Claimant, we believe it comports with the intention of the legislature and the Supreme Court's decision in *Lane Enterprises* by which this Court is bound. If we were to rule otherwise, Claimant, and others similarly situated, would be credited with an artificially inflated average weekly wage which does not reflect their true earnings. We conclude that such a result would be unreasonable, creating a windfall for employees in contravention of the plain intent of the legislature. *Lane Enterprises;* Section 922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922 (legislature does not intend an absurd or unreasonable result).

■ Furthermore, our decision in this case is in full accordance with this Court's recent decision in *Exide Corp.* We believe that today's decision, together with *Exide Corp.*, will dispel any confusion concerning the treatment of annual vacation pay [11] for the purpose of calculating a claimant's average weekly wage under the Act. While there may be individual cases where vacation pay should be included as part of the earnings of the period when it is actually paid, this treatment would generally be an exception rather than the rule.[12] In general, vacation pay is an annual payment earned over the course of an entire year; as such, it is appropriate to

---

**11.** In this appeal, we also reach the same conclusion with regard to Claimant's holiday pay, which under the CBA is also paid in a lump sum once a year. For the terms of the CBA's provisions governing holiday pay, *see supra* notes 3 and 4.

**12.** Although our decision does not expressly overrule *Boro of Midland,* we must emphasize that the *Boro of Midland's* holding is narrowly limited to the unusual factual scenario of that case.

prorate these payments over the entire year when it is earned.[13]

Accordingly, we reverse the order of the Board and remand this case for a recalculation of Claimant's average weekly wage.

### ORDER

NOW, January 4, 1996, the order of the Board in the above-captioned matter is hereby reversed, and this case is remanded to the referee for the purpose of recalculating Timothy Johnson's average weekly wage in accordance with the foregoing opinion.

Jurisdiction relinquished.

This decision was reached before the resignation of Judge NEWMAN.

Dissenting opinion by President Judge COLLINS.

COLINS, President Judge, dissenting.

I respectfully dissent from the majority opinion.

In analyzing this case, I fear that the majority in this case, like the majority in *Exide Corp. v. Workmen's Compensation Appeal Board (Kamenas)*, 653 A.2d 50 (Pa. Cmwlth.1994), has gone too far by equating the lump sum payment of vacation pay to the performance bonus that was at issue in *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994). The performance bonus in *Lane* was just that, a bonus based on the entire year's performance, and paid in that year.

Vacation pay, however, is an incident or benefit of employment provided for by the work agreement, and is an entitlement, like wages for work performed. *Temple v. Penn-*

sylvania Department of Highways, 445 Pa. 539, 285 A.2d 137 (1971). Although there is no finding of fact showing that this vacation pay was "earned" during the previous year, the majority appears to hang its hat on the Collective Bargaining Agreement (CBA), which, as testified to by employer's human resources manager, merely makes vacation pay *calculable* using a percentage of the previous year's gross wages. The CBA does not make the receipt of vacation pay contingent upon having worked the previous year because an employee in his first year of service may still receive a vacation pay of at least twenty-five dollars.

Vacation pay, and the Act's treatment of a lump sum payment thereof has been specifically addressed by this Court in *Boro of Midland v. Workmen's Compensation Appeal Board (Granito)*, 127 Pa.Cmwlth. 462, 561 A.2d 1332 (1989). In *Boro of Midland,* we held that "absent any concrete evidence to bolster ... [the] contention [that the vacation pay was earned in a prior year], we must dismiss it as meritless." Thus, we concluded in *Boro of Midland* that vacation pay, if actually disbursed, is earned in the quarter in which it is paid, and should not be prorated over the prior year's earnings. It is my opinion that such is the circumstances of this case.

Accordingly, I would affirm the Workmen's Compensation Appeal Board in the above-captioned matter.

---

**13.** We note that in *Exide Corp.* the claimant received his vacation pay for a three week period during which the claimant actually worked. In doing so, the claimant was able to effectively double his salary for that three week vacation period. We concluded that including the claimant's full vacation pay in his quarterly earnings when actually paid would artificially inflate his average weekly wage, and held that his vacation pay should be prorated for the entire year. Thus, the claimant's "vacation pay" was more in the nature of a bonus for past employment and not paid simply because he went on vacation.

We must point out, however, that neither our decision in *Exide Corp.*, nor our decision in the present case, addresses the question of whether an employee who receives vacation pay during the period of his or her actual vacation, and *does not work during that vacation period*, should have his or her vacation pay prorated over the entire previous year or included within the quarter in which the vacation was actually taken and the vacation pay was actually paid.