**Helen MILES, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SCHOOL DISTRICT OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 1, 1998.
Decided Feb. 1, 1999.
Reargument Denied March 24, 1999.

Richard A. Jaffe, Philadelphia, for petitioner.

William Song, Philadelphia, for respondent.

Before DOYLE, J., SMITH, J., and NARICK, Senior Judge.

DOYLE, Judge.

Helen Miles (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board), affirming an order of a Workers' Compensation Judge (WCJ) which had granted Claimant's claim petition. The sole issue before the Court is whether a "retroactive" payment, which represented both pre- and post-injury wages, was properly excluded from the calculation of Claimant's average weekly wage.

Claimant was employed with the School District of Philadelphia (Employer) as a non-teaching assistant at the Benjamin Franklin School in Philadelphia. As part of her duties, Claimant was responsible for keeping the hallways of the school free from congestion, as well as ensuring that students did not loiter in the hallways. Claimant was paid a per diem wage of $32.94 for the first 90 school days which she worked each year. However, after the 90th school day, she would attain the status of a long-term substitute and would be paid a weekly wage of $480.15, receiving approximately $960 every two weeks. This increase from a per diem basis to a biweekly salary would be retroactive back to the first day of the school year. Accordingly, after she had worked 90 school days, Claimant would receive a lump-sum payment representing her increase in salary for school days one through ninety. At the end of each school year, Claimant's status reverted back to that of a per diem employee.

On February 11, 1993, Claimant was attempting to clear the hallway when she encountered several students standing together in a group. When Claimant instructed the students to leave the hallway, one of the students pulled out a gun, gave it to another student in the group and said "shoot her." The student pointed the gun at Claimant, but the vice-principal of the school, Dr. Jacolet, pulled Claimant out of the way. Following this incident, Claimant filed an incident report with the Employer describing the

events, and she was taken to the emergency room at Hahnemann Hospital where she received treatment. Claimant worked intermittently for Employer from February 12, 1993, until April 9, 1993, but she never returned to working full time with Employer.

On June 29, 1993,[1] Claimant filed a claim petition, alleging that she sustained a work-related injury on February 11, 1993, and that her average weekly wage at that time was $480.41.[2] Employer filed a timely answer denying the allegations contained in the petition, and hearings were scheduled before a WCJ.

During the hearings, Claimant testified to the above events. In addition, she presented the deposition testimony of Dr. Timothy Michals, a board certified psychiatrist, who originally began treating Claimant on October 7, 1993. Dr. Michals noted that Claimant complained of repeated nightmares, depression and a general feeling of hopelessness and that Claimant had identified several areas of family problems which also caused her stress. Dr. Michals testified that, although Claimant is well oriented and free from psychotic features, she suffers from post-traumatic stress disorder which Dr. Michals attributed directly to the February 11, 1993 incident. Dr. Michals concluded that, as of the date of his deposition, March 15, 1994, Claimant was incapable of returning to her time-of-injury position.

In response, Employer presented the testimony of Dr. Robert DeSilverio, a board certified psychiatrist. Dr. DeSilverio performed a mental status evaluation of Claimant on July 14, 1993. Based on this evaluation, Dr. DeSilverio concluded that any emotional reaction that Claimant had to the February 11, 1993 incident had resolved itself at the time of his evaluation. Dr. DeSilverio, however, noted that Claimant related many family problems which could have easily accounted for Claimant's symptomatology. According-

1. Although the Board identified July 14, 1993, as the date on which Claimant filed her claim petition, our review of the Board's docket entries, as well as the time-stamped copy of Claimant's claim petition, indicates that Claimant filed the claim petition on June 29, 1993.

2. Although Claimant indicated on her claim petition that her average weekly wage was $480.41, she testified, and the WCJ found, that the correct figure was $480.15.

ly, Dr. DeSilverio concluded that Claimant could return to her pre-injury job without restrictions. Employer also presented the testimony of Bernadette Ryan, a clinical social worker who provided counseling for Claimant. Ms. Ryan confirmed that Claimant had a history which included spousal abuse and conflicts with Claimant's grown children.

Finally, Employer presented the testimony of Cheryl LaPotin, Employer's workers' compensation manager. Ms. LaPotin testified that Claimant had originally been hired as a non-teaching assistant and that she was paid on a per diem basis for the first 90 school days of each school year. Ms. LaPotin noted that, pursuant to the collective bargaining agreement in place at that time, Claimant would be entitled to retroactive pay after working 90 school days during the year. This pay would be retroactive back to the first school day of that school year. However, according to Ms. LaPotin, at the time of her injury, Claimant had not yet worked 90 school days, and, therefore, she was still a per diem employee. It was only in March of 1993,[3] after the work-related disabling incident at school, that she accumulated enough school days to become eligible for long-term substitute status and thus receive retroactive pay. In addition, Ms. LaPotin noted that Claimant's pre-injury position was still available to her if she desired to return to work with Employer.

On October 31, 1995, the WCJ issued a decision and order granting Claimant's claim petition and awarding Claimant temporary total disability in the amount of $158.33 per week for the closed period from February 12, 1993, to March 13, 1995. Additionally, the WCJ awarded Claimant partial disability benefits in the amount of $30.76 per week for the closed period from March 14, 1995, to June 25, 1995, after which Claimant's total

disability benefits would resume. All awards by the WCJ were calculated using Claimant's per diem wage and did not include Claimant's retroactive pay for which she became eligible after completing 90 school days during the year. In reaching this decision, the WCJ found Claimant's testimony concerning her work-related injury to be credible. Additionally, the WCJ found the testimony of Cheryl LaPotin to be credible, and he accepted the testimony of Dr. Michals over that of Dr. DeSilverio. Claimant appealed from the WCJ's order, and the Board, concluding that Claimant's appeal merely sought review of the WCJ's credibility determinations, affirmed the WCJ's decision. This appeal by Claimant followed.

On appeal to this Court,[4] the sole issue before us is Claimant's argument that the WCJ erred as a matter of law by failing to consider Claimant's retroactive pay in calculating Claimant's average weekly wage and weekly disability rate.

The starting point of our analysis is Section 309 of the Workers' Compensation Act (Act),[5] which defines the term "wages" as follows:

Wherever in this article the term 'wages' is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows:

(a) If at the time of the injury the wages are fixed by the week, the amount so fixed shall be the average weekly wage;

(b) If at the time of the injury the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

(c) If at the time of the injury the wages are fixed by the year, the average weekly wage shall be the yearly wage so fixed divided by fifty-two;

3. None of the witnesses identified the exact date on which Claimant attained long-term substitute status. Accordingly, the WCJ did not make a finding with respect to that issue. The parties agree, however, and the WCJ found, that at some point during the 1992–1993 school year, Claimant worked 90 school days, thus attaining long-term substitute status.

4. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582.

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage· shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

77 P.S. § 582.[6]

Although our research has revealed that neither this Court nor our Supreme Court has had occasion to address the precise issue presented to us, both this Court and our Supreme Court have considered a similar issue, that is, the retroactive application of post-injury pay. In *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994), our Supreme Court examined the treatment of a yearly bonus for average weekly wage purposes. In *Lane*, the claimant was a welder who suffered a work-related injury from exposure to zinc fumes. A Notice of Compensation Payable was issued including in the claimant's average weekly wage a yearly bonus, which was prorated over the entire previous year. The claimant received the bonus on February 27, 1987, approximately two months prior to the claimant ceasing to work for his employer due to his injury. The bonus was not based on the claimant's productivity during the previous year, but was paid based upon the employer's profits over the previous year. Subsequently, the claimant filed a petition to review the Notice of Compensation Payable, alleging that the entire bonus should be included in the quarter in which he received the bonus. The employer also filed a petition to review the Notice of Compensation Payable, alleging that **none** of the bonus should be included in the Claimant's wages because the bonus was not a wage. The WCJ concluded that the bonus was part of the claimant's wages and that it was to be included in the wages of the quarter in which it was *paid*, and the Board affirmed the decision.

On appeal to this Court,[7] we affirmed the Board, concluding that the bonus did, in fact, constitute part of the claimant's wages and that the bonus was properly allocated to the thirteen-week period during which it was paid to the claimant. The basis for this decision was our reading of Section 309 of the Act which provides that the calculation of a claimant's average weekly wage is to be that which is most favorable to the claimant. Our Supreme Court, however, reversed our decision, concluding that the bonus in question was a yearly bonus which did not represent the claimant's productivity during the previous year, nor did it represent the claimant's work during the period in which it was received; rather, it represented the claimant's status as an employee with the organization over the *entire* previous year. Accordingly, our Supreme Court held that the

6. Section 309 of the Act was amended by the Act of June 24, 1996, P.L. 350, commonly referred to as Act 57. Section 309 currently provides in relevant part as follows:

The terms "**average weekly wage**" and "**total wages,**" as used in this section, shall include board and lodging received from the employer, and gratuities reported to the United States Internal Revenue Service by or for the employe for Federal income tax purposes, but such terms shall not include amounts deducted by the employer under the contract of hiring for labor furnished or paid for by the employer and necessary for the performance of such contract by the employe, nor shall such terms include deductions from wages due the employer for rent and supplies necessary for the employe's use in the performance of his labor, nor shall such terms include fringe benefits, including, but not limited to, employer payments for or contributions to a retirement, pension, health and welfare, life insurance, social security or any other plan for the benefit of the employe or his dependents: **Provided, however, That the amount of any bonus, incentive or vacation payment earned on an annual basis shall be excluded from the calculations under clauses (a) through (d.2).** Such payments if any shall instead be divided by fifty-two and the amount shall be added to the average weekly wage otherwise calculated under clauses (a) through (d.2).

77 P.S. § 582 (second emphasis added). However, because Section 32.1(a) of Act 57 specifically provides that its amendments only apply to claims for injuries which are suffered on or after its effective date, August 24, 1996, the amendments to this section do not apply to Claimant as her injury occurred well before that date.

7. 150 Pa.Cmwlth. 395, 615 A.2d 975 (1992), *rev'd,* 537 Pa. 426, 644 A.2d 726 (1994).

amount of the bonus was to be allocated over the entire previous year rather than the thirteen-week period during which it was received.

We reached a similar conclusion in *Eljer Industries v. Workmen's Compensation Appeal Board (Johnson)*, 670 A.2d 203 (Pa. Cmwlth.1996), where we held that a claimant's vacation pay which was earned during the previous year was to be allocated over the entire year in which it was earned, rather than within the quarter when the claimant received the vacation pay. We noted in *Eljer* that the vacation pay was earned during the entire period of the previous year; therefore, the vacation pay arose from the claimant's work over the entire previous year and, like the bonus in *Lane*, was attributable to the entire year, not merely the quarter in which the employer paid such money. Moreover, we noted that, if a claimant received his vacation pay during a period in which he continued to work, *i.e.*, did not actually take a vacation and received wages for the time he worked in addition to the vacation pay, the claimant would artificially inflate his average weekly wage because the calculation would include monies earned as the result of his labor during that time, as well as wages acquired as the result of work that the claimant performed the year before. Accordingly, we held that, in most cases, a claimant's vacation is to be prorated over the entire year in which it was earned for purposes of calculating his average weekly wage. *See also Exide Corporation v. Workmen's Compensation Appeal Board (Kamenas)*, 653 A.2d 50 (Pa.Cmwlth.1994).

In the case presently before us, the parties agree and the WCJ found that, upon completion of the first 90 school days during the school year, Claimant would receive a lump sum payment of $4,370.55. As noted above, it is clear that, at some point during the school year, Claimant worked 90 school days and was, thus, entitled to the retroactive pay. It is also undisputed that this payment was a **retroactive** payment for Claimant's work during the first 90 school days of that school year. Clearly, then, the payment did not exclusively represent Claimant's work on the date that the payment was made, nor was the

retroactive payment based exclusively on Claimant's work after her injury; rather, like the bonus in *Lane*, the payment was based upon her status as an employee of the school district throughout the **entire** first 90 school days, the majority of which were prior to her injury. Despite these facts, the WCJ concluded that the retroactive payment was not includable in Claimant's average weekly wage, stating as follows:

> In short, it strains credulity to allege that work status and earnings generated as a result of work performed *after* the work injury can be used to increase a pre-injury average weekly wage.
>
> The Claimant's argument is akin to a salesman claiming a higher pre-injury average weekly [wage] than earned as of his work injury based upon a "sale" with resulting commissions made post-injury. While the salesman can legitimately argue that much of the effort and work leading to the "sale" occurred pre-injury, no sale would have occurred if no post-injury work effort had taken place.
>
> So too here. The "retroactive" or additional pay arises solely because Helen Miles qualified for [the] same by working for the School Board for multiple days *after* the injury.

(WCJ's Decision at 14.) (Emphasis in original.) Although it is clear that Claimant did become eligible for her retroactive pay by working several days following her injury, we disagree with the WCJ's conclusion that this fact, by itself, requires the retroactive pay to be removed from the calculation of Claimant's average weekly wage and allocated solely to her post-injury earnings. The reason for this conclusion is the fact that much of the retroactive pay represents Claimant's **work** prior to the February 11, 1993 injury. Therefore, like the claimant in *Lane*, the retroactive pay in the present case "is monies **earned** over a [specific] time and paid in one lump sum." *Lane*, 537 Pa. at 431, 644 A.2d at 728 (emphasis added).

Contrary to the hypothetical employed by the WCJ regarding a salesman who earned a commission by making a sale after the injury, that salesman did not **earn** his commission until the sale was actually made. Had the

sale been made prior to the injury, that commission would have been included in the salesman's average weekly wage. In this appeal before us, because the lump sum payment represented both pre- and post-injury work by Claimant, and, therefore, pre- and post-injury wages, the payment must be allocated over the entire period, *i.e.*, school days one through ninety, not just over the day or period during which she ultimately qualified for such money. A contrary conclusion would deprive Claimant of the benefit of her pre-injury work. Moreover, such a conclusion is consistent with our Supreme Court's decision in *Lane*, with this Court's decision in *Eljer Industries*, as well as with the humanitarian objectives of the Act. *See Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116 (1991).

Accordingly, we reverse the order of the Board and remand this case back to the Board for a new determination of Claimant's average weekly wage including her retroactive pay, as well as a new computation of Claimant's disability benefits using her new average weekly wage.

### ORDER

**NOW**, February 1, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed and this case is remanded for a computation of Claimant's average weekly wage and disability benefit rate consistent with this opinion.

Jurisdiction relinquished.

Judge LEADBETTER did not participate in the decision in this case.

SMITH, Judge, dissenting.

I respectfully dissent. The majority concludes that a lump-sum payment made to Helen Miles (Claimant) well after the time of her injury must be included in her average weekly wage computation pursuant to Section 309 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582. There is no dispute that the terms of Claimant's employment were that she was a per diem employee paid $32.94 for each of the first 90 days that she worked during the school year. After completing 90 days, her status changed to that of long-term substitute. She was then paid a weekly wage of $480.15, which she received as a payment of approximately $960 every two weeks, retroactive to the beginning of the school year, with the increased payment for the first 90 days paid as a lump sum. Claimant, however, had not attained the higher-paid status as of the time of her injury on February 11, 1993. Although the Workers' Compensation Judge (WCJ) credited Claimant's testimony as well as that of her medical witnesses concerning the events of that date and their effect on her, he rejected her assertion that she had attained long-term substitute status in November 1992.

The majority relies upon *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994), and *Eljer Industries v. Workmen's Compensation Appeal Board (Johnson)*, 670 A.2d 203 (Pa.Cmwlth.1996). In *Lane Enterprises* the issue was the correct treatment of a sizable annual bonus. The Supreme Court concluded that the bonus was most like wages received annually and that it was properly prorated over four quarters, rather than credited to the quarter in which it was received. The bonus at issue had been received in the year made up of four quarters before the date of injury. Similarly, in *Eljer Industries*, the dispute concerned treatment of vacation pay and holiday pay that the claimant received in the year preceding his injury. *See also Exide Corp. v. Workmen's Compensation Appeal Board (Kamenas)*, 653 A.2d 50 (Pa.Cmwlth.1994) (relying upon *Lane Enterprises* to conclude that vacation pay received in one of the four quarters upon which the average weekly wage calculation was based, i.e., before the injury, should be prorated). In all of these cases the questions concerned the allocation of payments that the claimants had already received.

In the present case, the majority approves a wage calculation incorporating a lump sum that Claimant received after her injury. In my view neither the precedents relied upon nor the Act supports such a result.