626 A.2d 679

**Gerson H. MILLER, Petitioner,**

**v.**

**STATE EMPLOYES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 30, 1993.

Decided May 7, 1993.

Reargument Denied July 13, 1993.

84

Elliot A. Strokoff, for petitioner.

Brian E. McDonough, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Gerson H. Miller (Miller) petitions for review of an order of the State Employes' Retirement Board (Board), affirming a hearing examiner's decision that held that the State Employes' Retirement System (SERS) correctly calculated and advised Miller of his accurate final average salary. We affirm.

Miller became a member of SERS in 1968, while employed at Edinboro University. In 1980, Miller was furloughed. This furlough ended in 1983, when he was employed by

Indiana University of Pennsylvania. In 1984 he transferred back to Edinboro University.

During Miller's furlough several grievances were filed, alleging violations of Miller's rehiring rights. An arbitration resulted in awards on three separate occasions. In addition to directing that Edinboro University rehire Miller, the arbitrator directed that compensation be paid to make up the difference between what Miller earned during his furlough period and what he should have earned if his rehiring rights had not been violated. The arbitration award ($36,782.80) was paid to Miller during the second quarter of 1984.

In April and in December of 1988, Miller requested retirement benefit estimates. These estimates showed Miller's final average salary to be $63,256.18. Shortly before Miller's retirement, he was informed that a review of his records revealed a discrepancy and that the arbitration award should have been allocated over eight quarters from 1981 through 1983, the period in which the money would have been earned had it not been for the violation of Miller's rehiring rights. This recalculation lowered Miller's final average salary calculation to $60,996.28, and in turn resulted in lower retirement benefits. Subsequent to this recalculation, Miller retired; however, he requested that the arbitration award be assigned to 1984, as SERS had done before its discovery that the $36,782.80 sum constituted an arbitration award.

When SERS refused to utilize the prior calculation method, Miller requested an administrative hearing. After hearing, the hearing examiner concluded that SERS acted properly in spreading the arbitrator's award over the quarters the award was intended to remedy. The hearing examiner also determined that Miller had not justifiably relied on the incorrect retirement estimates, since SERS had given an accurate final estimate prior to Miller's retirement. The Board upheld the hearing examiner's decision, and Miller now appeals to this Court.[1]

1. Our scope of review of an administrative board's final adjudication is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with the law, or whether consti-

Miller raises the following issues for our review: (1) whether the Board failed to comply with the State Employees' Retirement Code (SERC),[2] when it credited the arbitrator's lump sum cash award to the period during which Miller's rehiring rights were violated; and (2) whether SERS should be estopped from changing the method of calculating Miller's final average salary just prior to his retirement.

■ Miller argues that SERS's practice of allocating an arbitration award is without statutory authority and is contrary to the holding in *Pennsylvania Association of State Mental Hospital Physicians, Inc. v. State Employes' Retirement Board,* 484 Pa. 313, 399 A.2d 93 (1979). In *Pennsylvania Association* the issue concerned SERS's annualization of the final average salary of part-time employees and the adjustment of the years of service credit. The court held that salaried part-time contributors are entitled to a full year of service credit for each twelve month period of employment. The court further noted that the language of the State Employes Retirement Code of 1959 (1959 Code),[3] the statute at issue in *Pennsylvania Association,* did not authorize SERS to adjust any employee's salary or service credit for purposes of calculating retirement benefits. However, the subsequent enactment of the SERC, at issue in the case before us, reversed the decision in *Pennsylvania Association* and now provides for annualization of a part-time employee's final salary. See Section 5302 of the SERC and 4 Pa.Code § 241.1.

Miller also argues that service credit and final average salary are independent factors used in the formula for calculating retirement benefits. He recognizes that, under the SERC, service credit can be allocated but continues to argue that, because of its separate nature, final average salary

tutional rights were violated. *Costello v. State Employes' Retirement Board,* 141 Pa.Commonwealth Ct. 19, 596 A.2d 260 (1991).

2. 71 Pa.C.S. §§ 5101–5956.

3. Act of June 1, 1959, P.L. 392, *as amended,* §§ 101–807, formerly 71 P.S. §§ 1725–101–1725–807, repealed, Act of March 1, 1974, P.L. 125, § 2(a).

cannot be allocated and is based solely on compensation actually received.

We disagree, based on this Court's decision in *Abramski v. Public School Employees' Retirement System,* 99 Pa.Commonwealth Ct. 69, 512 A.2d 106 (1986).[4] In *Abramski,* a termination of a football coach resulted in an award of damages in a breach of contract suit that held the school district liable. In computing the coach's final average salary, the Public School Employees' Retirement System (PSERS) credited the damage award to the school year during which the money would have been earned if the contract had not been breached. The coach appealed, arguing that the award should have been credited to the year in which the money was actually paid. The Court upheld PSERS's decision to constructively assign the damage award to the year in which the compensation would have been earned.

The *Abramski* court concluded that, pursuant to Sections 8302(a) and 8102 of the School Retirement Code,[5] service credit and compensation are tied together and that one cannot be awarded without the other. Furthermore, the *Abramski* court determined that service credits can be awarded to years other than those in which the service was performed, and that compensation can likewise be awarded constructively. The provisions in the SERC lead us to the same conclusion.

Section 5102 of the SERC defines regular member contributions as the "product of the basic contribution rate, the class of

4. Although *Abramski* construes portions of the Public School Employees' Retirement Code (School Retirement Code), 24 Pa.C.S. §§ 8101–8534, rather than the SERC at issue here, this Court has relied on interpretations of a provision in the one statute to interpret a provision that is substantially similar to a provision in the other. *See Cook v. Public School Employees' Retirement Board,* 96 Pa.Commonwealth Ct. 328, 507 A.2d 911 (1986).

5. Section 8302(a) of the School Retirement Code provides that "school employees shall receive one year of credit for each school year ... for which the required regular member contributions have been made," and in Section 8102 of the School Retirement Code, regular member contributions are defined as "the product of the basic contribution rate and the compensation of the member."

service multiplier if greater than one and the compensation of the member." Moreover, Section 5302 of the SERC provides:

(a) Computation of credited service.—In computing credited State service of a member for the determination of benefits, a full-time salaried State employee including any member of the General Assembly, shall receive credit for service in each period for which contributions as required are made but in no case shall he receive more than one year's credit for any 12 consecutive months or 26 consecutive biweekly pay periods.

As in *Abramski*, we believe that the language in these provisions allows the constructive awarding of service credits; and it follows that the same may be done with compensation. Therefore, the award that Miller received in 1984 can be constructively awarded over the 1981–1983 period.

The *Abramski* court also addressed the inconsistent and unfair results that would follow if the constructive allocation of service credit or compensation were disallowed.

It would provide windfalls to certain employees while it would penalize others. Although in petitioner's case, it would be to his advantage for the Board to credit the compensation to 1980–81 because that is one of the three years used in calculating his final average salary, there are other situations where this policy would penalize the school employee. One example is where the litigation is not resolved until after the employee retires. Unless the Board can constructively award the service credit and compensation to the year when the service should have been performed, that employee will lose all retirement credits for the contested service.

*Id.* at 72, 512 A.2d at 108.

Miller also argues that final average salary refers to compensation actually received as a state employee and that the constructive allocation to years in which the compensation was not received is a violation of the statute.[6] Miller, however,

6. In Section 5102 of the SERC, compensation is defined as:

misnames his award as compensation.[7] It is not wages for services performed, but a cash award received as a result of a successful arbitration. However, again relying on *Abramski,* where an award, resulting from a breach of contract suit, was deemed compensation, we believe the Board correctly opted to credit Miller's award as compensation. The fact that one involved an award resulting from a court determination and the other resulted from an arbitration is of no moment.

■ Having concluded that the Board complied with the SERC when it credited the cash award to the period when Miller's rehiring rights were violated, we now turn to his second argument that SERS should be estopped from changing its methods of calculating his benefits just prior to his retirement. Miller bases his estoppel argument on the fact that for five years SERS calculated his benefits by crediting the award to his compensation in 1984, and that prior to his decision to retire, SERS changed their method of calculating his benefits by crediting the award to the years 1981–83. Miller further asserts that he had no way of knowing that SERS would change their method of calculation and that he relied on the statements and estimates issued by SERS, under their initial calculation method.

In *Hauptmann v. Department of Transportation,* 59 Pa.Commonwealth Ct. 277, 283, 429 A.2d 1207, 1210 (1981), the court set forth the doctrine of equitable estoppel as it applies to a Commonwealth agency, as follows:

> The underlying premise of the estoppel cases is that the doctrine of estoppel may be applied to a Commonwealth

Pickup contributions plus the remuneration actually received as a State employee excluding refunds for expenses, contingency and accountable expense allowances, and excluding any severance payments or payments for unused vacation or sick leave: Provided, however, That compensation received prior to January 1, 1973 shall be subject to the limitations for retirement purposes in effect December 31, 1972, if any.

7.   4 Pa.Code § 241.1 defines compensation as:
Limited to salary and wages received for services performed as an employe, but excluding monies received for bonuses, cash awards or similar emoluments.

agency, in cases in which it has intentionally or negligently misrepresented some material fact, knowing or having reason to know that another person will justifiably rely on that misrepresentation, and where that other person has been induced to act to his detriment because he did justifiably rely on that misrepresentation.

The critical elements of the estoppel doctrine are the misrepresentation and the justifiable reliance. *Police Pension Fund Association Board v. Hess,* 127 Pa.Commonwealth Ct. 498, 562 A.2d 391, *petition for allowance of appeal denied,* 524 Pa. 614, 569 A.2d 1371 (1989). SERS did not intentionally or negligently misrepresent facts. Miller had notice that the statements sent to him were estimates, subject to final review and audit, because each statement contained this language. Nor could Miller show that he justifiably relied on SERS's estimated statements. Miller received information before he retired, concerning the adjustments that SERS made in the calculation of his retirement benefits, based on the change in crediting his arbitration award. Since Miller received the updated estimates before retirement, he is prevented from claiming that he relied on the earlier estimates.

Additionally, the Board has authority to correct mistakes which impact retirement benefits. Section 5954(b) of the SERC provides that:

(b) Adjustment of errors.—Should any change or mistake in records result in any member, beneficiary or survivor annuitant receiving from the system more or less than he would have been entitled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the board shall correct the error and so far as practicable shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.

The Board has also promulgated a regulation that provides for the correction of errors in conformance with the SERC. 4 Pa.Code § 249.54(b) states:

(b) The Board upon learning of any mistake in any record resulting in the payment of a greater or lesser benefit than that provided by the code, will make an appropriate adjustment, as far as practicable, so that the person thereto entitled shall receive only the benefit specifically provided under the code.

We, therefore, conclude that Miller has failed to carry the burden of showing that SERS should be estopped from changing the method of calculating his retirement benefits. Clearly, the statute and a properly promulgated regulation allow SERS to correct any errors, which as here, are discovered before the member retires.

Accordingly, we affirm.

ORDER

AND NOW, this 7th day of May, 1993, the order of the State Employes' Retirement Board in the above-captioned matter is hereby affirmed.