Ernest P. **BEARDSLEY, William Berkoben, Luigi Bianchi, Andrew Blumenthal, Michael J. Cibroski, Mandy L. Cupp, Jerry S. Davis, Mary Beth Diefenderfer, Damien Q. Elias, Jay W. Evans, Thomas R. Fabian, John J. Farinella, Kim Frankford, Jack R. Hicks, Frank C. Hollister, Richard B. Irvin, Michael J. Kelliher, John W. McDonald, James L. McKelvey, Carol A. Noggle, Robert W. Pearl, Kenneth D. Peirce, David O. Potteiger, Peter H. Pundt, P. Vincent Racculia, Caroline M. Raistrick, Kenneth R. Reeher, Donna L. Richey, William D. Roman, Charles H. Russell, Mark R. Schmidt, Gary D. Smith, Larry W. Snyder, Walter L. Sobczak, Timothy L. Spigelmyer, Sally L. Stroup, Dennis E. Stufft, and Barbara E. Williams, Petitioners,**

v.

**STATE EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1996.
Decided March 31, 1997.

Elliot A. Strokoff, Harrisburg, and W. Thomas McGough, Jr., Pittsburgh, for petitioners.

Harold Dunbar, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, PELLEGRINI, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

LEADBETTER, Judge.

Petitioners, thirty-nine present and former senior management employees of the Pennsylvania Higher Education Assistance Agency (PHEAA), appeal from the order of the State Employes' Retirement Board (Board) which determined that payments made pursuant to PHEAA's Executive Marketing Incentive Program (EMIP) were not compensation under the Pennsylvania State Employees' Retirement Code (Code).[1] The questions presented are: (1) whether payments, which PHEAA began making to its senior management employees in 1987 pursuant to EMIP, are covered compensation under the Code; (2) whether payments made to employees for annual leave entitlements, which were about to lapse, are compensation under the Code; and (3) whether Petitioner Reeher's application for retirement, which he filed on December 31, 1991, in the midst of uncertainty as to what the Board would decide with respect to EMIP payments, qualify him for the ten percent, "Mellow" early retirement incentive ("Mellow incentive") under section 5302(c) of the Code.[2] For the reasons that follow, we reverse in part and affirm in part.

Initially, Petitioners contend that the Board disregarded relevant facts found by the hearing examiner in reaching its decision. The Board, not the hearing examiner, is the fact-finder. *Dowler v. Public Sch. Employes' Retirement Bd.,* 153 Pa.Cmwlth. 109, 620 A.2d 639, 641 (1993). Questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the fact-finding body and are subject to only limited review by this court. *Wyland v. Public Sch. Employes' Retirement Bd.,* 669 A.2d 1098, 1103 (Pa.Cmwlth.1996). Since we find substantial evidence in the record to support the Board's findings, we will not disturb them.

The facts as found by the Board are as follows. In 1987, PHEAA, a Commonwealth agency which awards and administers student aide programs and a guaranteed student loan program, authorized the implementation of EMIP, which established early retirement incentives for certain management employees. Payments made under EMIP were reported by PHEAA as compensation for purposes of retirement and capped at 20% or 25% of the employee's salary. PHEAA's Compensation Committee had final authority over the award of incentive pay.

On February 26, 1992, the State Employees' Retirement System (SERS) notified Petitioners that EMIP payments, as well as payments for excess annual leave, would be excluded from compensation for retirement purposes. Petitioners appealed to the Board, and the Board designated a hearing examiner to preside over a combined administrative hearing on March 24 and 25, 1993. On March 13, 1995, the hearing examiner issued his recommendation that EMIP payments received by senior management employees at PHEAA, which were based on reasonable compensation standards, should

---

**1.** 71 Pa.C.S. §§ 5101–5956.

**2.** 71 Pa.C.S. § 5302(c). Section 5302(c), entitled "Credited service as retirement incentive," provides an additional 10% credit to a state employee

 who terminates State service between February 1, 1991, and December 31, 1991, inclusive,

 who is, during such period, 55 years of age or older or will attain 55 years of age between January 1, 1992, and January 31, 1992, inclusive, with ten or more eligibility points, and who files an application for retirement prior to January 1, 1992....

be covered compensation for retirement purposes under the Code, but that payments for unused annual leave should not be treated as compensation. Hearing Examiner's opinion, p. 28.

After reviewing the record, the Board declined to follow the suggestions of the hearing examiner and denied all of Petitioners' claims. The Board reasoned that, even if PHEAA had intended EMIP payments to be compensation for retirement purposes, the discretionary nature of the program indicated that the payments were not awarded as a strict exchange for services rendered. *In re Claim of Beardsley, et. al.* (No.1992–11 (a-mm), filed January 25, 1996), slip op. at 14. Thus, the Board concluded that the payments were bonuses and, as such, were not covered compensation for purposes of retirement benefits. *Id.* at 17; *see* 4 Pa.Code § 241.1. The Board rejected Petitioners' argument that SERS should be estopped from excluding EMIP payments from retirement compensation because PHEAA had been reporting the payments as compensation since the program's 1987 inception. *Beardsley*, slip op. at 21. The Board also concluded that the definition of compensation set forth in section 5102 of the Code excludes the payments for excess unused annual leave. *Id.* at 24.

█ Our scope of review from final adjudications of administrative boards is limited to determining whether the board committed an error of law, whether constitutional rights were violated, or whether necessary factual findings are supported by substantial evidence. *Dowler*, 620 A.2d at 642. Moreover,

because the Board is charged with the execution and application of the Retirement Code, its interpretation should not be overturned unless it is clear that its construction of the Code is erroneous. *Wyland*, 669 A.2d at 1102.[3]

█ Both the Retirement Code and the regulations promulgated thereunder contain restrictions on the types of compensation that may be used in calculating an employee's final average salary. *Id.* These restrictions serve to ensure the actuarial soundness of the retirement fund by preventing employees from artificially inflating compensation as a means of receiving greater retirement benefits. *Id.* However, while the Board is not permitted to circumvent the express language of the Code, it must liberally administer the retirement system in favor of the members of the system. *Dowler*, 620 A.2d at 644.

█ First, Petitioners challenge the Board's conclusion that EMIP payments, as bonuses, should be excluded from covered compensation. They state that both the legislature and the courts have expressly included bonuses within the definition of compensation.[4] Petitioners argue that since section 5102 of the Code, defining compensation, does not expressly include bonuses or performance incentive payments among the list of exclusions from covered compensation, they are implicitly covered. Thus, Petitioners assert that Regulation 241.1's exclusion of bonuses from covered compensation for retirement purposes is inconsistent with its enabling statute, and is therefore void.[5] Administrative regulations which

3. When construing portions of the State Employees' Retirement Code, 71 Pa.C.S. §§ 5101–5956, this court has relied on interpretations of similar provisions of the Public School Employees' Retirement Code, 24 Pa.C.S. §§ 8101—8534. *Miller v. State Employes' Retirement Sys.*, 156 Pa. Cmwlth. 83, 626 A.2d 679, 681 n. 4 (1993).

4. *See e.g.*, Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7301(d); *Lane Enterprises v. Workmen's Compensation Appeal Bd.*, 537 Pa. 426, 644 A.2d 726 (1994)(including bonuses as wages for purposes of computing workers' compensation benefits).

5. The Retirement Code defines "compensation" as:

Pickup contributions plus remuneration actually received as a State employee *excluding refunds for expenses, contingency and accountable expense allowances, and excluding any severance payments or payments for unused vacation or sick leave.* ...

71 Pa.C.S. § 5102 (emphasis added).

The accompanying regulation defines "compensation" as:

Limited to salary or wages received for services performed as an employe, but *excluding monies received for bonuses, cash awards, or similar emoluments.*

4 Pa.Code § 241.1 (emphasis added).

are contrary to the statutes under which they were promulgated are invalid. *Public Sch. Employees' Retirement Sys. v. Pennsylvania Sch. Bds. Ass'n, Inc.,* 545 Pa. 597, 682 A.2d 291, 292 (1996). However, we need not here decide the validity *vel non* of Regulation 241.1 because we find that the payments in issue may not validly be construed as bonuses.

■ Whether or not a payment must be considered a bonus is a question of law. Since the Code did not exclude bonuses from its definition of compensation, we conclude that "bonuses" under Regulation 241.1 should be interpreted narrowly in order to comply with both the language and the purpose of the statute. In addition, where a statutory word at issue is undefined by the statute, we are required to construe the word according to its plain meaning and common usage. *Id.* at ——, 682 A.2d at 293.

In determining that EMIP payments are bonuses, and thus excluded from covered compensation, the Board emphasized the discretionary nature of EMIP. Based upon our review of the record and the factual findings of the Board, we conclude that although PHEAA's compensation committee retained ultimate discretion in awarding payments, the Board erred in disposing of the issue solely on this basis.

While the definition of a bonus for workers' compensation purposes does not control the definition for retirement purposes, we find that our analysis in *Orlando v. Schiavo Brothers, Inc.,* 10 Pa.Cmwlth. 86, 309 A.2d 84 (1973), provides guidance regarding the common usage of the term "bonus." In that case, this court determined that a one time payment was a bonus, and thus not included in the computation of compensation where: (1) the employer had no contractual obligation to pay the bonus; (2) the employer did not term the amount "wages"; (3) the em-

ployer retained unfettered discretion in deciding whether it would be paid; (4) there was no objective method of calculating how large the bonus would be; and (5) the bonus represented a relatively small fraction of the claimant's total income from his employment.

First, we hold that, contrary to the Board's claim, PHEAA's intention that EMIP payments constitute compensation for retirement purposes is relevant to determining whether the payments are bonuses. Second, unlike the bonus in *Orlando,* EMIP payments, capped at 20–25 percent, represent a substantial percentage of the participants' total salaries and had been paid regularly over a period of years. Finally, although EMIP payments are not guaranteed as part of each participants' employment contract, the payments are contractually due if goals are met and available funds are generated. As such, we agree with the hearing examiner's assessment that:

> The evidence presented confirmed that payments were not ad hoc, speculative, unsubstantiated awards granted at the whim of PHEAA. Rather such remuneration was carefully tied to actual performance and overall was within comparable earnings of like job positions. The award of each EMIP payment was based on carefully gathered and reviewed factual information, direct observation and seasoned senses of experience, and thus objective.... [T]he plan operated in theory and in fact as an effective compensation tool for evaluating performance based upon defined goals.

Hearing Examiner's opinion at 17–18.[6]

Based upon our evaluation of all of the relevant factors, we find that EMIP payments are bona fide incentive payments, not bonuses, and therefore, are not excluded from covered compensation by the definitions in either the Code or the regulations.[7] Ac-

**6.** Petitioners' note that section 7301(d) of the Tax Reform Code of 1971 defines compensation as including "salaries, wages, commissions, bonuses and incentive payments...." Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7301(d). Because the Code refers separately to "bonuses" and "incentive payments," Petitioners assert that there is necessarily a distinction between the two types of payment. We find this to be persuasive

with regard to the common usage of the term "bonus."

**7.** Having determined that EMIP payments should be included as covered compensation under the Code, we need not address Petitioner's estoppel argument.

cordingly, we reverse the Board's determination of this issue.

■ Next, Petitioners allege that the Board incorrectly held that payments for about-to-lapse annual leave should be excluded from compensation under the Code. Petitioners contend that the Board erred by relying on the definition under section 5102 of the Code, which excludes "payments for unused vacation" from the definition of compensation.[8] Instead, they claim that annual leave payments are distinct from unused vacation leave because of the narrow circumstances under which lapsed annual leave payments are authorized, i.e., when the pressing work load of the employee and the corresponding need for PHEAA to have that employee do the work cause the employee to forego paid annual leave.

We agree with the Board that Petitioners' attempt to distinguish "annual leave" from "vacation leave" is unavailing. The plain language of the Code indicates that unused leave, whether by personal choice or business necessity, is intended to be excluded from covered compensation. Thus, for purposes of administering SERS, "annual" and "vacation" leave are the same thing and both are excluded from covered compensation. Therefore, the Board's ruling with respect to this issue is affirmed.

■ The final issue is whether Petitioner Kenneth R. Reeher's application for retirement, which he filed on December 31, 1991, in the midst of uncertainty as to what the Board would decide with respect to EMIP payments, qualified him for the "Mellow incentive." In September of 1991, Reeher,

President and Executive Director of PHEAA, notified PHEAA's board of his intention to resign effective December 31, 1991. The State Employees' Retirement System (SERS), after performing a routine audit of his retirement account, requested clarification regarding Reeher's EMIP payments in a letter dated November 6, 1991. By letter dated December 17, 1991, PHEAA provided the requested information to SERS.

On December 31, 1991, Reeher contacted SERS to find out the status of its decision regarding his retirement allowance.[9] Reeher was concerned because in order to receive the benefits of the "Mellow incentive," he had to submit his application prior to January 1, 1992.[10] He was informed by Assistant Executive Director Dale Everhart that "as a matter of routine" SERS rejects conditional applications.[11] However, Everhart testified that an exception was made in this case: "Frankly, as a special accommodation to Mr. Reeher. What we stated at the staff level, was that we do not accept them, we would deny it; however, we would take it to our Board." (N.T. at 663–64).[12] Also, later on December 31, Everhart stated in a letter, "You are free, of course, to attempt to file a conditional application. If you do so, SERS will, instead of immediately rejecting the application, present it to the [Board] for decision. If you attempt to file a conditional application and the Board does not accept it, SERS will void the application...." (R. 439a).

Relying on Everhart's statements, Reeher submitted his retirement application on De-

---

8. Petitioners also allege that the 1975 amendments to the Code's definition of compensation constitute an unconstitutional impairment of contract. We find no merit to this allegation.

9. If Reeher's EMIP payments were not included as covered compensation, then he would not yet want to retire.

10. 71 Pa.C.S. § 5302.

11. SERS has an unwritten informal policy of not accepting conditional applications, N.T. at 533, with two exceptions not relevant here. Board's Finding of Fact No. 32. Another SERS employee, Susan Hostetter, testified that if an application were accompanied by a letter attaching conditions, SERS would ordinarily disregard the

letter and process the application as unconditional (N.T. at 575–76). This testimony was credited by the hearing examiner but implicitly rejected by the Board, which found that SERS' usual practice was to reject conditional applications immediately. What, if any, standard practice SERS usually followed is of little consequence, however, since Reeher was advised that he would be treated differently.

12. Another witness testified, "They normally would not go to the Retirement Board with it. That was a special consideration in this case. Normally, the Counselor would tell them that it is not acceptable." (N.T. at 577).

cember 31, 1991, with a cover letter, conditioning his application on the inclusion of his EMIP payments in the calculation of his retirement allowance. Still having received no answer, on January 21, 1992, Reeher wrote to SERS withdrawing the condition. On January 22, 1992, the Board voted to reject Reeher's conditional application as well as his attempted revocation of the condition. At oral argument before this court, counsel for SERS conceded that in spite of the advice given to Reeher by Everhart, SERS never intended to process the conditional application if the Board ultimately determined that the EMIP payments would be included in Reeher's retirement benefits. In other words, the SERS' "accommodation" of Reeher was simply a misleading illusion.

On appeal, the Board found that Reeher's application was appropriately rejected because he decided to "hedge his bets" in order to maximize his benefits and lost. We disagree. As Petitioners point out, the Code does not specifically require retirement applications to be filed unconditionally in order to qualify for "Mellow incentive" benefits. Although SERS has wide latitude to set reasonable procedures for the application process, under the somewhat extraordinary circumstances of this case, we do not believe that SERS acted reasonably. Knowing that Reeher and other similarly situated employees faced a crucial deadline on December 31, 1991, SERS failed to give timely notice of its position on EMIP payments so that the employees could make an informed retirement decision by that date.[13] Even assuming that SERS had valid reasons for this delay, it had an obligation, *at a minimum*, to be truthful with Reeher and his colleagues about the hard choice they had to make on December 31. Instead, it offered him an illusory "accommodation" and then rejected his application *because* he accepted the offer. If, as the Board states, Reeher attempted to "hedge his bets," it was SERS that forced Reeher to gamble in the first place and then gave him disingenuous advice about the house odds.

Thus, we hold that Reeher's application should be accepted and processed as of December 31, 1991.

Accordingly, the Board's decision is reversed with regard to EMIP payments and Reeher's application and affirmed with regard to annual leave payments.

FLAHERTY, J., dissents.

### ORDER

AND NOW, this 31st day of March, 1997, the order of the State Employes' Retirement Board in the above-captioned matter is hereby reversed in part and affirmed in part. The Board's exclusion of EMIP payments from covered compensation is reversed; the Board's exclusion of annual leave payments from compensation is affirmed; and the Board's rejection of Reeher's application as conditional is reversed. This case is remanded for proceedings consistent with this order and the attached opinion.

Jurisdiction relinquished.

DOYLE, Judge, Concurring and Dissenting.

I would affirm the order of the State Employes' Retirement Board in all respects.

FLAHERTY, J., joins.

---

**13.** As noted above, PHEAA had reported the EMIP payments as compensation and withheld retirement contributions from them for a number of years. Contributions were included in the employees' annual retirement statements as cov-

ered earnings. In 1990, after questioning EMIP payments when another PHEAA employee retired, SERS included the EMIP payments in compensation for that employee's retirement benefits.