# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas R. Czarnecki, : 
                Petitioner : 
                 : 
           v. : No. 1225 C.D. 2015
                 : Argued: May 11, 2016
State Employees' Retirement Board, : 
                Respondent : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION**
**BY JUDGE SIMPSON**                **FILED: July 6, 2016**

        Thomas R. Czarnecki (Petitioner) petitions for review from a decision and order of the State Employees' Retirement Board (Board) that excluded pay for on-call service from the amount of compensation in calculating his retirement benefit under the State Employees' Retirement Code, 71 Pa. C.S. §§5101-5957 (Retirement Code). Petitioner challenges the denial of his request for recalculation of his final average salary to include compensation he earned as an "on call" staff physician of the Department of Public Welfare[1] (Department) at the Harrisburg State Hospital, an inpatient mental health facility. He argues the Board's exclusion of on-call services from his benefits calculation violated his due process rights.

---

[1] The Department of Public Welfare was renamed the Department of Human Services.

Concluding the Board erred as a matter of law, we reverse and remand for a recalculation of benefits.

## I. Background

Petitioner was a staff physician for the Department at the hospital from 1981 until his retirement in June 2005. During that time, he volunteered to provide on-call service to ensure 24-hour patient care. In that capacity, Petitioner answered patient-care questions on the telephone, and he was required to be within 20 minutes of the hospital at all times to provide in-person treatment as needed.

A collective bargaining agreement (CBA) governed Petitioner's compensation throughout his employment. The CBA required that each "on call" physician provide a telephone number where he could be reached and be available for service within 20 minutes of a call. The CBA provided that physicians who serve in an on-call status "shall, at the employee's discretion, either be paid 25% of their base hourly rate for such 'on-call' time or receive compensatory time equivalent to 25% of such 'on-call' time …" Bd. Op., 6/22/15, at 3 (quoting Article 12, Section 14 of the CBA). When called in to the hospital, a physician received "emergency duty" compensation at 100% of his base rate for a minimum of three hours.

From 1981 until the early 1990s, the Department reported Petitioner's on-call service to SERS. The Department reported on-call time and pay separately from his regularly-scheduled service. Petitioner received retirement credit for the on-call services reported. For unknown reasons, the Department stopped reporting

2

Petitioner's on-call hours to SERS as of January 1, 1993. Nevertheless, SERS continued to receive reports of on-call pay, and accepted pickup contributions and employer contributions from the Department for Petitioner through 1999.

In 2000, SERS discovered that since 1993, the Department did not provide SERS with Petitioner's on-call hours or information necessary for crediting that service. Accordingly, SERS contacted the Office of Administration (OA) advising that without the requisite information (hours, employer and employee contributions and compensation) the member could not receive retirement credit.

Also in 2000, SERS advised OA that it would no longer accept "on-call" service information based on a new interpretation of the Retirement Code. As a result, the Department stopped reporting Petitioner's on-call service to SERS and stopped making employer contributions for his service. Therefore, from 2000 until Petitioner's retirement in 2005, Petitioner did not earn retirement credit for his on-call service.

Petitioner obtained a retirement benefit estimate from SERS around this time, and he learned the on-call service was not included. He retired in 2005. In 2007, Petitioner asked SERS to "correct the improper calculation" of his retirement benefits in order to include his on-call service. Reproduced Record (R.R.) at 152a. SERS denied the request, explaining: "Employees on standby overtime are not actually working for the Commonwealth and do not receive regular remuneration for the time spent waiting to be called to work." R.R. at

154a, SERS Ex. 4 (emphasis in original). SERS determined an on-call physician who is not at the hospital is not "actually engaged in work" for the Commonwealth. Id. (relying on Hoerner v. Pub. Sch. Emps.' Ret. Sys. (PSERS), 684 A.2d 112 (Pa. 1996)).

Petitioner appealed SERS' decision, arguing SERS' interpretation of the Retirement Code added the requirement to be "actually engaged in work." Id. The SERS' Appeals Committee reviewed and denied his claim. Petitioner appealed that denial, thereby initiating the formal appeal process before a hearing officer.

After holding a hearing in July 2010, a hearing officer issued a proposed adjudication (Adjudication) recommending denial of Petitioner's claim. Specifically, she found that 10% of the time he was on call, Petitioner did not need to report to the hospital. Hr'g Officer Adj., 2/1/11, Finding of Fact (F.F.) No. 20.

Petitioner filed exceptions to the Adjudication, to which SERS filed a brief in opposition. SERS did not file exceptions.

Four years later, in a split decision, the Board adopted the Adjudication, denying Petitioner's appeal. The Board determined on-call service, which was compensated at 25% of the base rate, did not qualify for compensation. Accordingly, the Board did not include Petitioner's pay for on-call service in the calculation of his final average salary. It explained service, salary and contributions were "inseparable components" of retirement benefits. Bd. Op., 6/22/15, at 9.

4

Based on Hoerner, the Board reasoned Petitioner's on-call service did not qualify as "creditable" because he was not "actually engaged in work" when not at the hospital. Id. at 13. Thus, it equated on-call service to standby overtime.

Petitioner filed a petition for review of the Board's decision. After briefing and oral argument, the matter is ready for disposition.

## II. Discussion

On appeal,[2] Petitioner argues SERS erred in construing the definition of compensation under the Retirement Code to exclude the on-call pay he earned as a state employee from the calculation of his retirement-covered compensation. He asserts the compensation he received for on-call services should be credited toward his final average salary used for determining his pension benefit. He also contends SERS' exclusion of on-call service from the benefit calculation after decades of including it, without notice, amounts to an unconstitutional deprivation of his pension rights without due process.

## A. Retirement-Covered Compensation

The question before us is limited to whether the on-call service Petitioner provided to the Department, which was compensated at 25% of his base rate throughout his employment, should have been included in the final average salary component of SERS' calculation to determine his retirement benefit.

---

[2] "Our review is limited to determining whether there was a violation of constitutional rights or an error of law, and whether any finding of fact was unsupported by substantial evidence." Weaver v. State Emps.' Ret. Bd., 129 A.3d 585, 587 n.2 (Pa. Cmwlth. 2015), app. den., __ A.3d __ (Pa., No. 885 MAL 2015, filed May 17, 2016).

5

At the outset, we recognize the Board is entitled to considerable deference in its construction of the statute and its attendant regulations. Weaver v. State Emps.' Ret. Bd., 129 A.3d 585, 587 n. 2 (Pa. Cmwlth. 2015), app. den., __ A.3d __ (Pa., No. 885 MAL 2015, filed May 17, 2016). Consequently, the Board's interpretation of the Retirement Code may not be overturned unless it is clearly erroneous. Id.

Moreover, the Board has the obligation to "liberally administer the retirement system in favor of the members of the system." Palyok v. Borough of W. Mifflin, 586 A.2d 366, 368 (Pa. 1991). However, "a liberal administration of the retirement system does not permit the [B]oard to circumvent the express language of the [Retirement] Code ...." Weaver, 129 A.3d at 588 (quoting Marinucci v. State Emps.' Ret. Sys., 863 A.2d 43, 47 (Pa. Cmwlth. 2004) (citation omitted)).

In construing terms in the Retirement Code, we follow the principles of statutory construction. Burris v. State Emps.' Ret. Bd., 745 A.2d 704 (Pa. Cmwlth. 2000). The object of statutory interpretation is to ascertain and effectuate legislative intent. 1 Pa. C.S. §1921(a). "Words and phrases in a statute must be construed according to their common usage and plain meaning." Burris, 745 A.2d at 707 (citing 1 Pa. C.S. §1903(a); Com. v. Stanley, 446 A.2d 583 (Pa. 1982)).

The Retirement Code defines "compensation" in pertinent part as: "Pickup contributions plus remuneration actually received as a State employee excluding refunds for expenses, contingency and accountable expense allowances; excluding any severance payments or payments for unused vacation or sick leave;

6

and <u>excluding</u> payments for military leave …." 71 Pa. C.S. §5102 (emphasis added). The regulation defines compensation as: "Limited to salary or wages received for services performed as an employee, but excluding monies received for bonuses, cash awards or <u>similar</u> emoluments."[3] 4 Pa. Code §241.1 (emphasis added).

A member's pension benefit is calculated as provided for in 71 Pa. C.S. §5702. Final average salary is defined in pertinent part as: "[t]he highest average compensation received as a member during any three nonoverlapping periods of four consecutive calendar quarters during which the member was a State employee …" 71 Pa. C.S. §5102. Notably, final average salary is dependent on the amount of compensation. Unlike credited service, it is not a function of time or hours worked for full-time state employees.

Both the Retirement Code and its corresponding regulations restrict the types of compensation that may be used in calculating an employee's final average salary. <u>Beardsley v. State Emps.' Ret. Bd.</u>, 691 A.2d 1016 (Pa. Cmwlth. 1997) (<u>en banc</u>). "These restrictions serve to ensure the actuarial soundness of the retirement fund by preventing employees from artificially inflating compensation as a means of receiving greater retirement benefits." <u>Id.</u> at 1019.

This Court recently upheld SERS' interpretation of "compensation" to include all remuneration received other than that expressly excluded from the

---

[3] Emolument is an advantage, "usu[ally] in the form of compensation or perquisites." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 408 (11th ed. 2003). Perquisites are "privilege[s], gain, or profit incidental to regular salary or wages." <u>Id.</u> at 923.

7

definition. Office of Admin. v. State Emps.' Ret. Bd., 131 A.3d 136 (Pa. Cmwlth. 2015) (OA v. SERB). In OA v. SERB, employer Pennsylvania State Police (PSP) argued that remuneration received by officers while on full-time union leave qualified as retirement-covered compensation. The governing CBA provided for payment to officers on union leave at a higher rate. After a hearing, the Board determined the higher rate of pay, including union stipends, qualified as retirement-covered compensation.

In so determining, the Board examined the definition of "compensation" in Section 5102 of the Retirement Code, 71 Pa. C.S. §5102. The Board reasoned that compensation was "broad enough to encompass union officer stipends." OA v. SERB, 131 A.3d at 141. That the CBA provided union stipends as part of officers' pay, paid on a normal schedule, influenced its conclusion.

Ultimately, the Board concluded that "because the 'remuneration does not fall into any of the categories of non-compensation payments found in Section 5102's definition, it must therefore be 'compensation' for purposes of [the Retirement Code] and thus includible as part of … retirement-covered compensation.'" Id. (citation omitted). That the Commonwealth did not withhold contributions or report the compensation to SERS did not alter the Board's analysis. Accordingly, SERS included the union stipends PSP officers received while on union leave as retirement-covered compensation.

On appeal, we upheld SERS' interpretation of compensation to include the union stipends. Specifically, we reasoned that any "remuneration

8

actually received as a State employee" qualified as retirement-covered compensation so long as it was not among the "enumerated exclusions." Id. at 142. Accordingly, the only exclusions from compensation are set forth in the statutory definition: "refunds for expenses, contingency and accountable expense allowances; severance payments or payments for unused vacation or sick leave; and payments for military leave." Id. These enumerated exclusions from the definition of compensation should be narrowly construed. Beardsley.

We followed the same rationale in construing what constituted "compensation" for inclusion in a final average salary calculation in Beardsley (reasoning payments not excluded from definition of compensation are implicitly included). See also W. Penn Allegheny Health Sys. v. Med. Care Availability & Reduction of Error Fund, 11 A.3d 598, 605-06 (Pa. Cmwlth. 2010), aff'd, 23 A.3d 1052 (Pa. 2011) (explaining "under the principle of *expressio unius est exclusio alterius*, the express mention of a specific matter in a statute implies the exclusion of others not mentioned").

In Beardsley, we analyzed the definition of compensation and the enumerated exclusions to determine if certain contractual incentive payments qualified for inclusion in the final average salary. There, SERS declined to include payments made pursuant to the state employer's marketing program in the salary calculation. The Board determined the state employee was not entitled to inclusion because "the discretionary nature of the program indicated the payments were not awarded as a strict exchange for services rendered." Id. at 1019. We reversed.

9

In rejecting SERS' interpretation of compensation, we evaluated the nature of the payment. We reasoned the incentive payment was not discretionary in that the employer was contractually obligated to pay it when certain goals were met. We also considered the intention of the state employer in establishing the pay scale. We concluded as a matter of law that contractual incentive payments were not equivalent to bonuses because they were owed. Based on these factors, we held the incentive payments were not expressly excluded from compensation, and so were included.

Following Beardsley and OA v. SERB, we conclude that on-call pay is "compensation" because it is not expressly excluded from the statutory definition.

To the extent SERS asserts on-call pay falls within the exclusions as a "contingency payment or allowance," Respondent's Br. at 20, we reject that contention. This Court previously interpreted the term "contingency" as: "'[a]n event that may or may not occur; a possibility. The condition of being dependent on chance; uncertainty.'" Larsen v. State Emps' Ret. Sys., 22 A.3d 316, 324 (Pa. Cmwlth. 2011) (quoting BLACK'S LAW DICTIONARY 315 (7th ed. 1999)).

Applying the plain meaning of "contingency" enunciated in Larsen, on-call pay is not contingent. The incidence or amount of on-call pay is not dependent on chance. Rather, it is set by the CBA. Petitioner earned on-call pay at 25% of his base rate in direct exchange for hours performing on-call service. Further, on-call pay is not at the Department's discretion. Payments for on-call

service were made on a regular basis, as contractually owed. These characteristics favor inclusion of on-call pay as retirement-covered compensation. OA v. SERB (retirement-covered compensation includes overtime pay, shift differentials and other bargained-for increases, like union stipends); Beardsley (compensation includes contractual incentive payments that were objectively calculated).

Our interpretation of compensation here is consistent with this Court's tradition of honoring bargained-for remuneration in a contract. See, e.g., OA v. SERB; Beardsley; Joll v. State Emps.' Ret. Bd., 632 A.2d 638 (Pa. Cmwlth. 1993) (including rank differential payment awarded under CBA as compensation in final average salary calculation).

In short, we discern no reason for excluding on-call pay from retirement-covered compensation and the calculation of the final average salary component of Petitioner's benefits calculation. Accordingly, we conclude SERS' exclusion of on-call pay from retirement-covered compensation is clearly erroneous and unsupported by the Retirement Code.

## B. Hoerner

In lieu of applying the principles of statutory construction generally employed when discerning whether payments to a state employee qualify as compensation, the Board argues its exclusion of on-call pay from compensation is compelled by our Supreme Court's decision in Hoerner. We disagree.

11

Hoerner involved the retirement of a public school employee whose salary was increased in termination agreements. The retiree argued the increases qualified as compensation, whereas PSERS excluded them as severance payments. Relevant here, our Supreme Court held the increases were properly excluded from compensation for purposes of calculating final average salary.

The Board's reliance on Hoerner is misplaced for several reasons. First, from a statutory construction standpoint, Hoerner involves interpretation of the Public School Employees Retirement Code (PSERC), 24 Pa. C.S. §§8101-8536. Case law construing PSERC only applies to construction of the Retirement Code when the provisions are the same or similar. OA v. SERB; Miller v. State Emps.' Ret. Sys., 626 A.2d 679 (Pa. Cmwlth. 1993) (cases construing PSERC may be used when construing sufficiently similar provisions under the Retirement Code).

In the instant case, the definitions of the operative term, "compensation," materially differ. Compare Section 5102 of the Retirement Code, 71 Pa. C.S. §5102, with Section 8102 of PSERC, 24 Pa. C.S. §8102. The definition of compensation applicable to school employees under PSERC contains more exclusions than Section 5102 of the Retirement Code. PSERC explicitly excludes "other emolument[s] received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service…." 24 Pa. C.S. §8102 (emphasis added). The Retirement Code does not contain such broad exclusions.

12

Second, in Hoerner, the former employee argued that increases agreed to as part of termination agreements qualified as retirement-covered compensation. Our Supreme Court reasoned such payments were equivalent to severance payments explicitly excluded from the definition of compensation. In its analysis, the Court considered the nature of the payment and its relationship to the employee's activities. The Court held the increases were severance payments because the purpose of the payment was to resolve disputes and to terminate the employee's service. Thus, Hoerner is consistent with our decisions in Beardsley and OA v. SERB in that enumerated exclusions from compensation were not included in the final average salary.

Importantly, Hoerner is both legally and factually distinguishable. The fact that the member in Hoerner was no longer employed, and so was not providing *any* service at the time of his payment triggered the Supreme Court's admonishment that credit for service required the performance of actual work. Consequently, Hoerner implicated different legal definitions and concepts as to the award of time when the member was not working as a state employee at the time for which he sought credited service.

The amount of credited service, which is the years of service component of the benefit calculation, is not in dispute here. Because Petitioner was a full-time state employee at the time he provided on-call service, he received credit for all his years of service. The only issue before us is the salary part of the benefit calculation. See Bd. Op. at 10, n.10; Pet'r's Br. at 8.

The findings the Board adopted did not include a finding that on-call pay constituted a severance payment that lacked any connection to work. Indeed, on-call pay directly corresponds to on-call services performed.[4] On-call pay was certain and paid on a regular basis pursuant to the CBA. The CBA recognized on-call services as work, albeit at a reduced rate of pay. See Com. v. Pa. State Troopers Ass'n, 23 A.3d 966 (Pa. 2011) (plurality op.) (CBA may provide for different rate of pay, which results in an increase in the amount of benefits).

Nevertheless, the record reflects Petitioner performed "actual work" while on-call, but not at the hospital, for 10% of the time he was "on-call." R.R. at 70a-75a. While not at the hospital, Petitioner took calls, directing hospital staff on patient care issues and making medical judgments as to whether he needed to go into the hospital to render in-person patient care (which he did 90% of the time). R.R. at 74a. Although Petitioner was ostensibly free to sleep and perform personal tasks, he was restrained to activities that would allow him to be ready to treat a patient at the hospital within 20 minutes. Essentially, in reversing its position as to inclusion of on-call pay, SERS divorced services performed from compensation.

In sum, SERS' contention that on-call service does not qualify as "work" because it does not occur at the worksite or involves idle time engrafts a new limitation on the definition of compensation. The Retirement Code does not require compensation to correspond to actual work performed. Nor does our

---

[4] Without on-call service, a hospital is unable to assure 24-hour medical care, which is essential to hospital operations. See, e.g., 28 Pa. Code §117.26 (physician on-call schedule for basic and general emergency service; requirements for medical coverage).

Supreme Court's decision in <u>Hoerner</u>. By adding a "performance of actual work" prerequisite in the definition of compensation, the Board erred.

### C. Other Considerations

Lastly, we consider whether our interpretation of compensation to include on-call service is consistent with other sections of the Retirement Code. The Board argues the on-call pay provision in the CBA does not govern the meaning of compensation, as that would elevate the CBA above the Retirement Code in determining pension benefits.

Inclusion of on-call pay in the final average salary calculation does not violate Section 5955 of the Retirement Code, 71 Pa. C.S. §5955.[5] This is simply a case in which the CBA affected the amount of pension benefits because it set the rate of pay. <u>Pa. State Troopers Ass'n</u>; <u>OA v. SERB</u>. Affecting the amount of benefits is not the same as defining pension benefits in contravention of the Retirement Code. <u>Weaver</u>.

Regarding SERS' assertion that it merely corrected a prior error as permitted by Section 5954(b) of the Retirement Code, 71 Pa. C.S. §5954(b), we are unpersuaded. SERS offered no explanation as to why its prior interpretation was

---

[5] Section 5955 provides, in pertinent part, "no collective bargaining agreement … shall be construed to change any of the provisions [in the Retirement Code], to require the [B]oard to administer pension or retirement benefits not set forth in this part." 71 Pa. C.S. §5955.

erroneous, or why it reversed its position.[6]  Moreover, the provision allows adjustment for "mistake[s] in records," not for changes in policy.  <u>Id.</u>

### III. Conclusion[7]

Because on-call pay constitutes retirement-covered compensation, SERS had no basis for excluding that remuneration for on-call service from Petitioner's final average salary calculation.  Accordingly, we reverse the Board, and remand for a recalculation of benefits[8] including on-call pay.  <u>See</u> <u>Gowden v. State Emps.' Ret. Bd.</u>, 875 A.2d 1239 (Pa. Cmwlth. 2010) (remanding for recalculation of benefits; reversing Board's error in statutory construction); <u>Beardsley</u>.

_____

ROBERT SIMPSON, Judge

---

[6] As a matter of fairness, it is noteworthy that SERS included on-call pay as retirement-covered compensation for Petitioner's first 15 years of employment.  Inexplicably, SERS reversed its position, without notice to Petitioner or other affected state employees, and stopped including on-call pay for Petitioner's last five years of employment.

[7] Because we hold SERS' statutory construction of compensation was clearly erroneous, we need not address Petitioner's constitutional claim.  However, we note SERS' interpretation had the effect of reducing Petitioner's pension benefit, to which he has a vested right.  <u>Pa. Assoc. of State Mental Hosp. Physicians v. State Emps.' Ret. Bd.</u>, 361 A.2d 449 (Pa. Cmwlth. 1976).

[8] Contributions may be made after the fact.  <u>See</u>, <u>e.g.</u>, <u>Miller v. State Emps.' Ret. Sys.</u>, 626 A.2d 679 (Pa. Cmwlth. 1993) (apportioning lump sum payments of arbitration award over years of service).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas R. Czarnecki,                  :
                          Petitioner  :
                                      :
          v.                          :    No. 1225 C.D. 2015
                                      :
State Employees' Retirement Board,    :
                          Respondent  :

# **O R D E R**

**AND NOW**, this 6th day of July, 2016, the Order of the State Employees' Retirement Board is **REVERSED**, and the matter is **REMANDED** for recalculation of benefits in accordance with the foregoing opinion.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge